1. EXECUTION—PRIORITIES BETWEEN EXECUTION AND OTHER CLAIMS.

The will of a testatrix creating a trust was void, and her property descended to her heirs. Before her death a third person obtained a judgment against some of her heirs. The trustee in the will, assuming the validity thereof, conveyed the trust property to a purchaser. Thereafter the judgment creditor levied executions on the interest of the judgment debtors. *Held* that, as the conveyance by the trustee was void, the judgment creditor obtained a lien on the interests of the judgment debtors, as against the purchaser.

2. SAME.

A judgment creditor, after the expiration of ten years from the rendition of the judgment and after the the death of the debtor, served on his widow and children notice of application for leave to issue execution on his judgment, as authorized by Code Civ. Proc. § 1380. Thereafter the widow and children gave a mortgage on their interests in the debtor's property to a mortgagee, who had notice of the facts. One of the children also executed a deed to the widow. *Held*, that the mortgage and deed were not superior to the lien of the judgment creditor, though the notice of levy, under section 1252, relating to the giving and recording of a notice of an execution on real property levied on after ten years after filing the judgment roll, could not be recorded until the execution was actually issued and the execution could not be issued until leave was obtained from the courts.

3. DESCENT AND DISTRIBUTION—DEBTS OF DECEDENT—PRIORITY AS AGAINST HEIRS.

The interests of a widow and children in real property descending from the deceased husband and father is subject to the debts of the decedent, whether liens on his estate or not.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Descent and Distribution, §§ 457, 466–471.]

4. PARTITION—RELIEF—ALLOWANCES FOR IMPROVEMENTS.

In partition, a defendant, believing in good faith that it had acquired a good title to the property, made valuable improvements thereon. It was probable that plaintiff, claiming title, entertained the same belief during the time the improvements were made. *Held*, that the court, on adjudging that the defendant had no title, was required to protect him by giving to him the reasonable value of the improvements.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Partition, §§ 236–246.]

Appeal from Judgment on Report of Referee.

Partition by the Lyons National Bank against George H. Shuler and others. From a judgment of partition, rendered on the report of a referee, plaintiff and certain defendants appeal. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

T. W. Collins, B. S. Rude, and Thad. Collins, Jr., for appellants. C. T. Ennis, J. W. Hoag, and Hamn & Knapp, for respondents.

WILLIAMS, J.   The judgment should be reversed, and a new trial granted, with costs to appellants to abide event.

The action was in partition. The plaintiff claimed title to three-

fifths of the property. The referee decided it had no title to the three-fifths of the property in dispute, the "Milling Company Property" so called. One Magdalena Shuler died March 26, 1893, while the owner of the property. She left a husband, three sons, one daughter, and the children of another daughter, who was deceased, her heirs, who inherited the property unless it was otherwise disposed of. Mrs. Shuler left a will, wherein she gave the property in trust to her son George H. Shuler; but this trust was void, and the property therefore descended to the heirs named. September 2, 1884, the plaintiff recovered judgments against the husband and three sons of the deceased for $6,809.28, which were docketed in the clerk's office, upon which executions were issued and returned unsatisfied, and which remained wholly unpaid when deceased died. One of the sons, Philip, died intestate August 11, 1896, and the husband died March 26, 1899. Plaintiff issued executions upon its judgments against the two living sons December 21, 1901, and, after leave from the Surrogate's and the Supreme Courts, issued execution against the deceased son's heirs July 10, 1902. Levies were made upon the executions, notices thereof filed, and August 30, 1902, three-fifths of the property inherited by the three sons was sold, and bid in by plaintiff, and December 30, 1903, it received a deed thereof.

This action was brought in January, 1904, based upon the title acquired under such deed. It is claimed that plaintiff acquired no title under the sale and deed because of the disposition thereof by the trustee under the will of Mrs. Shuler. After her death, assuming the trust created thereby to be valid, the trustee conveyed the mill property to Charles T. Ennis, July 20, 1898, for $4,000, and Ennis conveyed the same to the Lyons Milling Company for $5,000, July 27, 1898 The milling company, November 21, 1898, mortgaged the same to Nelson R. Graham for $4,000, and August 27, 1901, it mortgaged the same to Elida T. Keesler for $3,500. These transfers were all prior to the issue of the executions upon which the property was sold and conveyed to plaintiff, and were more than 10 years after the docketing of the judgments upon which the executions were issued. The referee held that, the liens of the judgments having ceased when the deed to Ennis was given, the property was not bound thereby, and Ennis and his subsequent grantees acquired good title as against the plaintiff. The trouble with this view is that the deed to Ennis conveyed no title, because the trustee had none to convey. The title was then in the heirs of Mrs. Shuler, and remained there until the executions were subsequently issued and the property was sold thereunder. Ennis received no conveyance from the heirs. If he had, his title would have been free from the liens of the plaintiff's judgments. His deed from the trustee gave him no standing to contest the title of the plaintiff, acquired by sale under the judgments and executions. This conclusion of the referee was therefore erroneous, and, so far as the judgment was based thereon, it must be reversed.

The widow and three children of Philip Shuler, a son of the deceased, January 30, 1902, gave Jefferson W. Hoag a mortgage for legal services, past and future, upon their interests in this property,

and on the same day two of the children gave their mother a deed of
their interests for board, etc.   The plaintiff had before that, and De-
cember 21, 1901, served upon the widow and children the notice of
application for leave to issue executions upon their judgments, under
section 1380, Code of Civ. Proc., and Hoag had notice of these pro-
ceedings when he took his mortgage.   It is claimed this mortgage and
deed were superior to the liens of the plaintiff's judgments, which were
not restored until some months later.   The notice of levy under sec-
tion 1252 could not be filed and recorded until the executions were
actually issued, and they could not be issued until leave was obtained
from the Surrogate's and Supreme Courts.   Proceedings to procure
leave had been commenced before the mortgage and deed were given,
and all the parties had notice thereof.   It can hardly be held the deed
and mortgage under such circumstances would be superior to the liens.
But there is another answer to this claim.   The interests of the widow
and children in the property were subject to the debts of the deceased
husband and father, whether liens upon his real estate or not, and
these judgments were certainly debts, if not existing liens, upon such
property.   The conclusion of the referee as to these conveyances was
therefore erroneous, and, so far as the judgment is based thereon,
it must be reversed.

The milling company alleges, the evidence shows, and the referee
finds, that, since it received its deed and took possession of the proper-
ty thereunder, it has made large improvements on the property, and
it is claimed it is equitably entitled to be protected by reason thereof.
No provision of this kind was made by the judgment, because the mill-
ing company was held to have title to the three-fifths of the property
as claimed by it.   Inasmuch as we hold the milling company has no
such title, and direct a new trial of the case, the question of equitable
protection to the milling company for the improvements made will
necessarily arise on the new trial.   The referee finds that the property,
when the milling company took it, was worth only $2,000, and that the
improvements thereon have amounted to at least $13,000.   Apparently
the milling company in good faith believed it had acquired a good title
to the property, and made the improvements with such belief.   It is
very probable that the heirs of Mrs. Shuler, and the plaintiff who now
claims the title, during the time the improvements were being made,
entertained the same belief; otherwise, the milling company would not
have been permitted to retain the possession of the property and make
the improvements thereon.   They all lived in the immediate locality,
and made no claim to the property adverse to the milling company, and
no objections to the improvements being put thereon.   Under these
circumstances, the law appears to be well settled that equity will afford
the milling company some protection in this case.   The latest case in
which this question has been considered and discussed by the Court
of Appeals, is Satterlee v. Kobbe, 173 N. Y. 99, 65 N. E. 952.   In
that case many of the former decisions bearing upon the question are
considered.   In the course of the opinion it is said:

"In a partition action the court will always adjust equities between tenants
in common arising out of expenditures and improvements made by one of

them against the other; and, if it may adjust such equities in an action of partition, no good reason is apparent why it should not adjust similar equities in behalf of a person setting up an adverse possession and having made improvements upon a part of the property in reliance upon his having a good title, although such title may be in fact defective. Assuming, for the sake of the argument, that the answering defendants have not been in possession for a period of time long enough to bar the plaintiff, but have been in such possession for a period less than 20 years, and during that time have occupied and possessed the property and made valuable improvements thereon, it may be that the defendants would be able to prove upon the trial a state of facts that would require a court of equity to grant them relief or compensation for their improvements. This suggestion would be strengthened very much if it should appear that the plaintiff or the true owners looked on all the time without making any objection, while the persons in possession under claim of title were expending their money in such improvements. * * * Relief, such as is here suggested, is administered, not upon the ground that the party making the improvement, without the agreement or assent of the owner, gains a lien upon the property for his advances; but it rests upon the proposition that one who seeks equity must do equity, and that the tenant out of actual occupation, who asks a court of equity to award him partition, is entitled to relief only upon condition that the equitable rights of his co-tenants shall be respected. * * * The same principle has been extended to cases where a party, not a tenant in common, but who has in good faith made improvements on property which he honestly supposed belonged to him. Thomas v. Evans, 105 N. Y. 601, 12 N. E. 571, 59 Am. Rep. 519."

This question should be considered, and the decision upon the new trial should pass upon the same, in the adjustment of the interests of the respective parties in the milling property. It does not occur to us that any other questions need be considered by us at this time.

The judgment should be reversed, and a new trial granted before another referee, with costs as before indicated. All concur.