## JACOBS v. FOWLER et al.

(Supreme Court, Appellate Division, Second Department. December, 3, 1909.)

1. VENDOR AND PURCHASER (§ 130*)—MARKETABLE TITLE—EASEMENTS.

The owner of lots conveyed them, reserving "an easement for the use of two cesspools built on or about the rear line of said lots." *Held,* that such easement did not· constitute an incumbrance on a portion of one of the lots on which neither of the cesspools was located, so as to render title to such portion unmarketable.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246; Dec. Dig. § 130;* Specific Performance, Cent. Dig. § 258.]

2. VENDOR AND PURCHASER (§ 130*)—MARKETABLE TITLE.

The owner of land died, leaving his widow and six children, who were made parties in partition, ·in which the land was sold to the widow and three of the children, by whom it was conveyed, and by subsequent mesne conveyance with warranties the title passed to defendants. *Held,* that defendants had a marketable title, although one of the deeds in the chain does not contain covenants of warranty, and the service of summons in the partition suit on one of the children was defective, where there was sufficient evidence that such child had died unmarried, without issue, and intestate, in which event his mother and the other living children were his heirs, and the only child living who did not join in the deed under the partition sale conveyed all his interest derived through the deceased child to two of the grantors in the deed under such sale.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246; Dec. Dig. § 130;* Specific Performance, Cent. Dig. § 258.]

3. DEATH (§ 4*)—SUFFICIENCY OF EVIDENCE.

Evidence in an action on a contract to convey land *held* sufficient to show the death of a person who had formerly owned an interest in such land.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 5, 6; Dec. Dig. § 4.*]

4. DESCENT AND DISTRIBUTION (§ 19*)—PRESUMPTIONS—INTESTACY.

In the absence of evidence to the contrary, it will be presumed that a decedent died intestate.

[Ed. Note.—For other cases, see Descent and Distribution, Dec. Dig. § 19.*]

5. EVIDENCE (§ 288*)—EVIDENCE AS TO MARRIAGE—GENERAL REPUTATION.

The fact that a person is unmarried may be established by general rep-·utation in his family.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1147; Dec. Dig. § ·288.*]

6. ESTOPPEL (§ 38*)—BY DEED—AFTER-·ACQUIRED TITLE.

Where a deed contains express covenants of warranty, or quiet enjoyment, it operates as an estoppel against the claim of the grantor or his privies to a subsequently acquired estate in the lands therein described.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 99; Dec. Dig. § 38.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am., Digs. 1907 to·date, & Rep'r Indexes

7. COVENANTS (§§ 65, 67*)—COVENANTS RUNNING WITH THE LAND.

Before it is broken, a covenant of quiet possession or of warranty runs with the land.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 62, 64; Dec. Dig. §§ 65, 67.*]

8. COVENANTS (§ 80*)—TRANSFER—OPERATION AND EFFECT OF DEED.

A covenant of quiet possession or of warranty, and the right of action thereon, is assignable, and a conveyance of land by a bargain and sale or even a quitclaim deed, containing no covenants transfers such rights to the grantee named therein.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. § 85; Dec. Dig. § 80.*]

Appeal from Special Term, Queens County.

Action by Maurice Jacobs against Joel Fowler and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and MILLER, JJ.

John W. Magee, for appellant.
Rawdon W. Kellogg, for respondents.

BURR, J. Plaintiff's right to recover depends upon whether the title which the defendants offered to convey to him on the 14th day of April, 1907, was a marketable one. Two objections are urged against it. The first is based upon the claim that the premises are subject to an easement in favor of the adjoining property. The said premises consist of the northerly 20 feet of a lot known as lot 109 on a map entitled "Map of Morris Park," etc., and the southerly 20 feet of lot 110 on the same map. In 1903 H. Florence Hackett, who then claimed to be the owner of said lot 109, conveyed the same, together with lots 106, 107, and 108 on the said map, to Mary G. O'Hara and Regina O'Hara. In this deed the grantor reserved to herself, her heirs and assigns, "an easement for the use of two cesspools built on or about the rear line of said lots 109 and 108." The trial court has found, and upon evidence which is quite sufficient, that neither of these cesspools was located upon that part of lot 109 which was to be conveyed to the plaintiff. If it be conceded that the portion of lot 109 upon which the cesspool and its connections are situated is subject to an easement in favor of the owner of adjoining properties, such easement creates no incumbrance upon that portion of the lot which the plaintiff agreed to purchase.

The second objection is based upon the claim that there is an outstanding interest in said land in favor of Jeremiah Watson Briggs, or his heirs, which will not be conveyed by the defendants' deed. In 1876 the property belonged to one Jeremiah Briggs, who then died, leaving him surviving his widow, Jane R. Briggs and six children, Joseph L. Briggs, John S. Briggs, Mary R. Briggs, George S. Briggs, Jeremiah Watson Briggs, and Nina Briggs Fowler. He left a will by which, in the residuary clause thereof, he devised the premises in question. We might hesitate to follow the learned Special Term in holding that under said will Jeremiah Watson Briggs took no interest in the land in ques-

tion, or that there was an equitable conversion thereof. It is not necessary to pass upon that question, in our view of the case. In the year 1881 an action was brought for the partition of the said land, in which all of the persons claiming under the said will, including the said Jeremiah Watson Briggs, were made parties. If we concede—which we do not decide—that there was a jurisdictional defect in connection with the service of the summons upon the said Jeremiah Watson Briggs, so that whatever interest he had in the said premises was not cut off by the judgment entered therein and the sale had in pursuance of such judgment, we still think that the title is marketable.

The trial court found that the said Jeremiah Watson Briggs died intestate, unmarried, and without issue after the said sale in partition, and on or about the 24th day of September, 1884. We think that there was abundant evidence to sustain this finding. It appeared that he was born in the year 1834. It appeared that he was a man of somewhat dissipated habits, and at the time of his father's death in 1876 he was an inmate of the Inebriate Asylum at Binghamton, N. Y. Subsequently, and for some time prior to the 24th of September, 1884, he had been residing in the South. At the time of the commencement of the partition suit he resided in Florida. In the summer of 1884 he was at Savannah, Ga. Letters were frequently received from him, dated at that place, the last one of which, dated on the 30th of August, expressed a desire that he could enter a hospital somewhere. His family were in the habit almost weekly of sending him a small sum for his personal use, and it would appear that he was largely dependent upon that for his support, as he stated in his letters that he could get no employment. About the 24th of September one of his brothers wrote to the postmaster of Savannah stating that he had weekly sent him letters and had received no reply, and asking if the letters had been delivered. Three letters were returned by the postmaster to the writer, with a statement that they had not been called for, and that the person to whom they were addressed was dead and buried. Since then nothing has been heard from him by any member of his family. It is true that there is no positive evidence from any one who was present at his funeral, or even saw his body after death. But the fact of death must often be proved by evidence of a different character and largely hearsay. The fact that he was unmarried is likewise established by general reputation in the family, and in the absence of evidence to the contrary the presumption would be that he died intestate.

If he had any interest, therefore, in the premises in question, which was not cut off by the judgment and sale in partition, it descended to his mother for her life, with remainder to his then living brothers and sisters. These were Mary R. Briggs, Nina H. Fowler, and George S. Briggs. His brothers, John S. Briggs and Joseph L. Briggs, had previously died, the former before the judgment in partition was entered, and the latter subsequently thereto, but intestate, unmarried, and without issue. Jane R. Briggs, his mother, died February 28, 1889. In March, 1907, George S. Briggs and his wife by a quitclaim deed conveyed to Mary R. Briggs and Nina H. Fowler all of their right, title, and interest of, in, and to any and all real estate of which Jeremiah

Watson Briggs had died seised, and which did not specifically appear of record to have been disposed of by him during his lifetime. It does not appear that there was any record evidence of the premises in question having been so disposed of. On the sale in partition the premises were purchased by Jane R. Briggs, the widow of Jeremiah Briggs, Joseph L. Briggs, Mary R. Briggs, and Nina H. Fowler. Subsequently thereto, and on the 30th of January, 1883, they conveyed the said premises, by a full-covenant warranty deed, to one John A. Bowman. They were subsequently conveyed by various mesne conveyances, until the title thereto was vested in the defendants in this action. Each of these conveyances contained full covenants and a warranty, with one exception. That deed was a bargain and sale deed. The rule is well settled in this state that, where a deed contains express covenants of warranty or quiet enjoyment, it operates as an estoppel against a claim of the grantor or his privies to a subsequently acquired estate in the lands therein described. House v. McCormick, 57 N. Y. 310; Sweet v. Green, 1 Paige, 474, 19 Am. Dec. 442; Kellogg v. Wood, 4 Paige, 578, on page 592.

It is claimed, however, by the appellant, that inasmuch as in the chain of title through which the defendants claim to be the owners of the premises there is one deed which does not contain covenants of warranty, this rule does not apply. We think the contention is not well made. Before it is broken, a covenant of quiet possession or of warranty runs with the land. These covenants and the right of action upon them are assignable, and a conveyance of land by a bargain and sale, or even a quitclaim deed containing no covenants, operates to transfer such rights to the grantee named therein. Beddoe's Executor v. Wadsworth, 21 Wend. 120; Hunt v. Amidon, 4 Hill, 345, 40 Am. Dec. 283; Jenks v. Quinn, 137 N. Y. 223, on page 230, 33 N. E. 376; Thomas v. Bland, 91 Ky. 1, 14 S. W. 955, 11 L. R. A. 240. As was said in the last case:

"A covenant of warranty of title runs with the land, to which the vendee looks as security against any defect in the title, and which is transmitted to each successive purchaser; and the fact that a purchaser with this covenant sells the land to another person without his covenant of warranty does not restrict the latter's right, so far as the previous warranty is concerned, to his immediate vendor. If the immediate vendor has a covenant of warranty, as it runs with the land, it is included in the sale of his title, notwithstanding the fact that he declines to warrant the title thus conveyed. This covenant of warranty is not conveyed by a succeeding covenant of warranty, but by the words of conveyance, and any words that convey the title convey the warranty that the vendor holds, because, as said, it runs with the land, and is transmitted by the conveyance."

Inasmuch therefore, as Mary R. Briggs and Nina H. Fowler have acquired all the title, if any, of Jeremiah Watson Briggs which was not cut off by the judgment in partition and the sale had thereunder, and inasmuch as they originally conveyed the land with covenants of quiet possession and of warranty, which covenants have not been broken by the eviction of persons claiming under them through a paramount title, the title subsequently acquired by them will inure to the benefit, not only of their immediate grantee, but of each subsequent

grantee of the said premises, and they will be estopped from asserting any claim by reason of such after-acquired title.

It follows, therefore, that the deed tendered by the defendants to the plaintiff was sufficient to convey to him a good and marketable title to the premises described in it, and the judgment appealed from should be affirmed, with costs. All concur.