In the Matter of Proving the Last Will and Testament of PASQUALE CALTABELLOTTA, Deceased.

GIOVANNA CALTABELLOTTA, Appellant; NETTIE MAY CALTABELLOTTA, Respondent.

Fourth Department, May 1, 1918.

Husband and wife — divorce — when decree of absolute divorce rendered by foreign State not recognized in this State — when wife against whom such divorce has been obtained is lawful widow — Surrogate's Court — probate — when first wife may intervene as party to probate proceedings — dower.

Where a testator, before coming to this country and acquiring a legal residence in the State of Illinois, had been lawfully married in Italy, in which country he left his wife and the children of the marriage, and the wife subsequently came to this country but acquired a residence in the State of Pennsylvania where she continued to live with her surviving child until the death of her husband, an absolute divorce granted in favor of the husband by the courts of the State of Illinois on the ground of desertion and abandonment will not be recognized as valid by the courts of this State where the wife was not served within the State of Illinois and did not appear in the action and the only service of process upon her was by publication in a Chicago newspaper and a mailing of the summons to Italy and to a town in Pennsylvania where the wife had never resided.

Hence, although the husband after said divorce remarried and had children, the first marriage is still recognized as in force by the courts of this

State and the first wife is his lawful widow and entitled to be made a party to a proceeding to probate her husband's will.

*It seems*, that the divorce is only valid within the territorial limits of the State of Illinois.

As the testator left all his property to the woman he subsequently married, she is entitled to take under his will, except in so far as his lawful widow is entitled to dower in the real estate.

Nature of actions for divorce and matters of jurisdiction discussed, per De Angelis, J.

Appeal by the plaintiff, Giovanna Caltabellotta, from a decree and order of the Surrogate's Court of the county of Erie, entered in the office of said Surrogate's Court on the 26th day of December, 1917, adjudging that appellant is not a party interested in this proceeding, and denying her petition for leave to intervene.

*Louis L. Thrasher* and *Horace O. Lanza*, for the appellant.

*Clarence MacGregor*, for the respondent.

De Angelis, J.:

This is a proceeding for the probate of the will of Pasquale Caltabellotta. The appellant filed her petition in the Surrogate's Court in which she sought to be made a party to the proceeding on the ground that she, instead of the proponent, is the lawful widow of the deceased. The proponent made an application to dismiss the appellant's petition and the court took the proofs of the respective parties bearing upon the application and made the order in favor of the proponent which is here under review.

There is involved on this appeal the question of the validity of a judgment of absolute divorce granted by the Circuit Court of the county of Cook in the State of Illinois at the October term, 1903, in the city of Chicago, in favor of Pasquale Caltabellotta, the decedent, against Giovanna Caltabellotta, the appellant, upon the ground of desertion and abandonment. At the time of the commencement of the action in which such judgment was rendered the decedent was a resident of Chicago and the appellant was a resident of Swissvale, in the State of Pennsylvania. The appellant was not served with the summons in the action within the State of Illinois, she did not appear in the action and there is no evidence that she was ever

served with a copy of the summons anywhere by mail or otherwise. The summons was only served on her by publication in a Chicago newspaper. The papers in the divorce action show that a copy of the summons was mailed to the appellant at three places, to wit, Milksport, Penn., Trabia, Sicily, and Palerma (so spelled), Sicily. There is no such place as Milksport, Penn., and the appellant never resided in such a place.

It appears that the decedent and the appellant, each being about nineteen years of age, were married by a priest at Trabia, in the province of Palermo, Sicily, Italy, in the year 1883, and lived there together about five years. Four children were born to them in Italy, all of whom are dead except Antonino, who now goes by the name of Anthony and is one of the parties to the probate proceeding. The decedent and appellant were married again by the civil authorities at Trabia in 1889. In about that year decedent left Italy and came to live in the United States. He lived three years in New Orleans, La., and in 1892 went to Chicago where he resided until about the year 1904. In 1904 he came to Buffalo where he resided until his death which occurred June 11, 1917. He was a barber. He left real and personal estate in Buffalo. By his will he gave the use of all his property to the proponent and the remainder to his six children, share and share alike.

The appellant remained in Italy until about the year 1902 when she came to the United States with her son Anthony and took up her residence at Swissvale in the State of Pennsylvania, where she and he have resided ever since.

On March 2, 1896, decedent married the proponent in Chicago. It appears that the proponent did not know at that time that the decedent had been married. As already stated, the decree of divorce was obtained in October, 1903. In May, 1904, the decedent and proponent were again married in Chicago.

The decedent left him surviving the proponent, who claims to be his lawful widow, and the appellant, who makes a like claim, and as his only heirs at law and next of kin six children, five by the proponent and one by the appellant.

An action for divorce, either *a vinculo matrimoni*, or *a mensa et thoro*, is an action *in personam* proper, that is to say, an

action in which the defendant has been personally served with process for his appearance within the territorial limits of the State or sovereignty in which the action is brought, or in which the defendant has voluntarily appeared. The judgment pronounced in such an action in any State of the Union, irrespective of the ground upon which it was granted, is entitled to the benefit of the full faith and credit provision of the Federal Constitution (Art. 4, § 1) in any other State. There is another proceeding, called an action for convenience, where the so-called defendant neither is so served with process nor appears therein, but is without the territorial limits of the State or sovereignty wherein such proceeding is laid, and where the so-called defendant is in no manner subjected to the jurisdiction of the court in which such proceeding is instituted. Such a proceeding is, of course, not *in personam* nor is it a proceeding *in rem*. It partakes of nothing in the nature of the former, but may be said to partake in some respects somewhat of the nature of the latter. It is not the latter because, assuming that the marriage relation may be the *res*, the whole *res* is not within the jurisdiction of the court. The foundation of such a proceeding is the right of a sovereign State to determine and regulate the status of its citizens. There is implied in the concept of sovereignty this right. It has been said many times, and is now repeated, that the sovereign States of the Union had this right and never delegated interference therewith in the matter of divorces to the general government.

At the time our government came into being divorces were granted in England by acts of Parliament. That practice was adopted in this country. It has been said that the right to grant divorces was a legislative right, proceeding from the right of a sovereign State to determine the status of its citizens. An interesting discussion in this connection will be found in the opinion of the Supreme Court of the United States in *Maynard* v. *Hill* (125 U. S. 190). In the exercise of the right to dissolve the marriage relation by legislative enactment no notice whatever was given except that resulting from the enactment itself. Whether originally the exercise of a legislative or judicial function, the right to grant divorces, as now recognized in the law, is generally exercised by the courts under legislative enactments.

The State of Illinois had the right to delegate to the Circuit Court of Cook county jurisdiction to determine the status of the decedent with reference to the appellant or to any other person or persons and to enforce the judgment pronounced by such court within the territorial limits of that State. As a sovereignty, for the moment leaving out of consideration any restrictions imposed by the Federal Constitution, the State of Illinois would have the right to defend its action in that regard by resort to arms. Its inability so to defend its action would be the only limitation of its right as against any other sovereignty or power challenging its right. Since no such situation can arise in our system of government, the judgment of the Circuit Court of Cook county has no binding force outside of the State of Illinois. It has been repeatedly held that the full faith and credit provision of the Federal Constitution has no application to such a judgment. The courts of other States might recognize the validity of the judgment, by comity, although a question might arise as to their right so to do under the due process provision of the Federal Constitution (14th Amendt. § 1).

The State of New York early announced and has steadfastly maintained its policy that the marriage relation and its preservation were highly important to the welfare of the people. In that view its Legislature provided that there should be only one ground upon which one of the parties to a marriage should be granted an absolute divorce from the other and that is the adultery of the latter. It has been the policy of the State of New York not to encourage, but to discourage, the granting of divorces. Whatever the advent of woman suffrage and the tendency in the direction of socialism may accomplish to undermine this policy of our State, the policy still prevails under the sanction of our statutes. The State of New York has been unwilling, so far, to recognize, by comity, the binding force of such judgments as that under consideration pronounced for a cause not regarded of sufficient gravity to justify the dissolution of the marriage relation.

It is said, however, that New York has only enforced this policy in favor of its own citizens and that our courts would turn a deaf ear to a citizen of a sister State applying to them for the benefit of such policy. I am not willing to concede

that the courts of New York have committed themselves to a
position so selfish, so far losing sight of the principle involved.
In this connection we must bear in mind that the State of
Pennsylvania has refused to give validity to such judgments
by comity.     (*Colvin* v. *Reed*, 55 Penn. St. 375; *Reel* v. *Elder*,
62 id. 308.)     The appellant is a resident of the State of
Pennsylvania.     Our attention has been directed to *Kaufman*
v. *Kaufman* (177 App. Div. 162) and *Percival* v. *Percival*
(106 id. 111; affd., without opinion, in 186 N. Y. 587) as
deciding the question involved in hostility to the views here
expressed, but, although we think that correct conclusions
were reached in those cases, we do not think the decisions are
necessarily in conflict with our views.

The discussion contained in the foregoing has, we think,
ample support in the opinion of the Supreme Court of the
United States in *Haddock* v. *Haddock* (201 U. S. 562).     The
*Haddock* case was decided by a bare majority of the members
of the court and the dissenting opinions indicate that the
minority members of the court regarded the decision as
overruling the decision of the court in *Atherton* v. *Atherton*
(181 U. S. 155).     This was not intended by the court.     In the
*Atherton* case emphasis was laid on the existence of the matri-
monial domicile.     Mrs. Atherton had gone from the State of
New York as the bride of Mr. Atherton and their matrimonial
domicile was clearly established in the State of Kentucky.
While that condition of things existed and in the State of
Kentucky they separated.     The matrimonial domicile still
continued in the State of Kentucky and by reason thereof
Mrs. Atherton was a citizen of the State of Kentucky.     While
she was such citizen, the acts of cruelty upon the part of
Mr. Atherton toward her of which she complained took place,
and the courts of Kentucky were open to her for redress.
That being the situation, she voluntarily departed from that
State.     Under the doctrine of the matrimonial domicile she
still was a citizen and resident of that State and subject to
the jurisdiction of its courts exercised under the laws of the
State.     It was upon that theory that the Supreme Court of
the United States held that the judgment of divorce obtained
by him against her in the courts of the State of Kentucky
was a judgment *in personam* which bound them both by its

terms.   It is true that she was not served personally with process in the State of Kentucky nor did she appear in that action, but as she was a citizen of the State of Kentucky and her domicile was in that State, she was bound to respect the statute of Kentucky which provided the manner in which she received the notice of the Kentucky action which he brought to secure the divorce.

So that we have here the fact that the decedent and the appellant were legally married, that the marriage was consummated and that they lived together and had children. The marriage once proven to have existed is presumed to exist until the contrary appears.   In the court below the proponent was allowed to prove the dissolution of that marriage relation by the judgment of the Circuit Court of Cook county in the State of Illinois.   That ruling was erroneous because the appellant was a stranger to that judgment and it proved nothing as against her.   Upon the proofs in this record the appellant must be regarded as the lawful widow of the decedent.

In the case at bar no great hardship will attend the conclusion that we have reached, because there is a will, and, if that will is probated, the only interest that the appellant will have in the property of the decedent will be her dower right in the real estate.   Irrespective of this consideration, the administration of the law as we conceive it to be, must necessarily be accompanied at times with unfortunate consequences.   Notwithstanding this, if the principle which has been established in New York is the result of the best thought of the judiciary and the Legislature, the inconveniences and disturbing elements that may result are not too great a price to pay in order to maintain the principle.

It follows from the foregoing that the order of the Surrogate's Court should be reversed, the application of the appellant granted, and the proceeding remitted to the Surrogate's Court, there to be acted upon in accordance with this opinion.

All concurred; LAMBERT, J., not sitting.

Order reversed, with ten dollars costs and disbursements, and proceeding remitted to the Surrogate's Court to be there acted upon in accordance with the opinion.