CAROLINE A. BELL, Appellant, *v.* JANET LITTLE and Others, Respondents, Impleaded with HENRY KUHN and Others, Defendants.

Fourth Department, December 22, 1922.

**Dower — plaintiff secured divorce in Pennsylvania from first husband without personal service of process — plaintiff married decedent in Pennsylvania — both plaintiff and decedent resided here before and after marriage — second marriage not valid here so as to entitle plaintiff to dower in decedent's real property — deed to decedent and plaintiff as tenants by entirety, consideration being paid by decedent, conveyed estate as tenants in common only — Real Property Law, § 94.**

The plaintiff was not the wife of the decedent in this State so as to entitle her to dower in real estate owned by him, where it appears that she, a resident of this State, went to Pennsylvania for the sole purpose of securing a judgment of divorce from her first husband; that she secured a divorce in the Pennsylvania courts on the ground of abandonment without personal service of process upon her first husband, who resided in this State; that thereafter the decedent went to Pennsylvania and during the lifetime of the plaintiff's first husband entered into a ceremonial marriage with the plaintiff with the full knowledge of the facts relating to the plaintiff's divorce, and that the plaintiff and the decedent returned to this State and continued to reside here until the decedent's death.

A deed of land to the plaintiff and the decedent as tenants by the entirety, the consideration being paid by the decedent, operated to pass title to them as tenants in common only, and the plaintiff is entitled to one-half thereof as against the heirs of the decedent. A holding to the contrary would be in disregard of section 94 of the Real Property Law.

KRUSE, P. J., and DAVIS, J., dissent, with opinions.

APPEAL by the plaintiff, Caroline A. Bell, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 6th day of August, 1921, upon the decision of the court, rendered after a trial at the Monroe Special Term, dismissing the complaint, denying plaintiff's claim of dower in certain premises described in the pleadings, and also excluding the plaintiff from ownership in another parcel deeded to the plaintiff and James Bell as tenants by the entirety.

*William MacFarlane,* for the appellant.

*James R. Creary,* for the respondents Little.

*Oswald P. Backus,* for the respondents Bell.

SEARS, J.:

Plaintiff seeks in this action admeasurement of dower in certain premises of which James Bell was seized at the time of his death. The answering defendants, who are heirs at law of James Bell, challenge the plaintiff's claim of dower on the ground that the plaintiff was not the lawful wife of James Bell.

In 1904 the plaintiff married one Kelsey in this State and lived with him in Rochester until May, 1912, when she abandoned her husband and went to the State of Pennsylvania for the sole purpose of obtaining a judgment of divorce from Kelsey in the courts of that State. She instituted an action and was granted a divorce by the Pennsylvania courts on the 5th day of December, 1914, on the ground of abandonment. Process was never personally served upon Kelsey in the State of Pennsylvania or elsewhere, and he entered no appearance in the action, and was at all times a resident of this State, and is still living. The plaintiff, too, has always resided in this State, except for the brief period that she remained in the State of Pennsylvania for the purpose of instituting and carrying on the divorce against Kelsey. James Bell, who was also a resident of this State, was acquainted with the plaintiff before she went to Pennsylvania and knew that she was going to Pennsylvania to get a foreign decree of divorce against her husband Kelsey. Shortly after the granting of the decree, Bell went to the State of Pennsylvania, and he and the plaintiff went through a form of ceremonial marriage at Erie, Pennsylvania, on the 5th day of June, 1915. Bell and the plaintiff then returned to Rochester where they lived together as husband and wife until the death of Bell on the 21st day of December, 1918.

The judgment of divorce must be assumed to be valid within the territorial limits of Pennsylvania. However, as the Pennsylvania courts failed to acquire jurisdiction of Kelsey, the defendant in that action, by personal service, and Pennsylvania never was the matrimonial domicile of Kelsey and his wife, the courts of this State are not required by the Federal Constitution (Art. 4, § 1) to give full faith and credit to the Pennsylvania judgment. (*Haddock* v. *Haddock*, 201 U. S. 562.)

According to the long-established doctrine, the status of the plaintiff in this State as the wife of Kelsey remained unaffected by the Pennsylvania judgment. (*Ball* v. *Cross*, 231 N. Y. 329; *Hubbard* v. *Hubbard*, 228 id. 81; *Winston* v. *Winston*, 165 id. 553; *Matter of Caltabellotta*, 183 App. Div. 753.)

In the case of *Kelsey* v. *Kelsey* (204 App. Div. 116), decided at the same time as this case, we recognize this very plaintiff as the wife of Kelsey, but deny her husband Kelsey the divorce which he seeks because of his own misconduct, which the defendant in that case (the plaintiff here) has set up as a defense.

It is doubtless the general rule that a contract entered into in another State or country if valid there is valid everywhere, and this rule is often applied to the marriage contract. (*Van Voorhis* v. *Brintnall*, 86 N. Y. 18.) Our courts have not adopted the rule

which seems to prevail in England that when a marriage is attacked on the ground that one of the parties was incapable of contracting a valid marriage, the incapacity is to be judged by the law of such party's domicile. (Dicey Confl. Laws [3d ed.], rule 182, chap. XXVI; *Sottomayer* v. *DeBarros*, L. R. 3 P. D. 1.

The State has, however, unquestioned jurisdiction over the marital status of its own citizens. (*Maynard* v. *Hill*, 125 U. S. 190.) The State should not apply the *lex loci contractus* to one of its own citizens when by so doing a situation is created which is not in conformity with its own recognized policy. (*Cunningham* v. *Cunningham*, 206 N. Y. 341; *Bays* v. *Bays*, 105 Misc. Rep. 492; Whart. Confl. Laws [3d ed.], § 165A.) To recognize in this State the Pennsylvania marriage between this plaintiff and James Bell involves the recognition of two marriages of the plaintiff existing at the same time. As James Bell was at all times a resident of this State, we are in my opinion justified in treating this as an exception to the general rule.

On the other hand, the Pennsylvania judgment would prevent the plaintiff claiming any matrimonial rights against Kelsey upon the principle that " ' where a party has invoked the jurisdiction of any court and submitted himself thereto, he cannot thereafter be heard to question such jurisdiction.' " (*Starbuck* v. *Starbuck*, 173 N. Y. 503.)

The plaintiff contends that this principle was also applicable to James Bell in his lifetime, and is binding upon the defendants who succeeded to his rights, because Bell was cognizant of the plaintiff's original intention when she went to Pennsylvania to secure a divorce, and married her with knowledge of and in reliance upon her Pennsylvania judgment of divorce from Kelsey.

In *Kaufman* v. *Kaufman* (177 App. Div. 162) the plaintiff was denied a judgment of annulment which he sought on the ground that the defendant had another husband living at the time of his marriage with her because he had persuaded and induced her to secure a foreign divorce and had furnished her the money to do so, and assured her that the divorce so obtained was valid. The instant case is lacking in elements which were there present. The plaintiff here was far from innocent in the Pennsylvania transaction. The evidence shows no persuasion or inducement on Bell's part. She was unquestionably up to the time of the death of Bell and is still the wife of Kelsey, although, as stated, because of her action in Pennsylvania she could not claim her wifely rights against him. She cannot, while occupying this status, claim rights inconsistent therewith against the heirs of Bell, nor has any act of James Bell entitled her to immunity from the consequence of her own conduct. Both the plaintiff and Bell entered into their relations

with each other with their eyes wide open, a condition inconsistent with the doctrine of estoppel.

It appears that after the ceremonial marriage in Pennsylvania between the plaintiff and James Bell, a parcel of real estate in the city of Rochester was deeded by the parents of Bell to James Bell and the plaintiff as husband and wife. The court has found that no part of the consideration for this conveyance was paid by the plaintiff, and has concluded as a matter of law that since the plaintiff was not the wife of James Bell, the conveyance was one to the plaintiff and James Bell as tenants in common, but that the plaintiff, having paid no part of the consideration, acquired no interest in the property and has excluded her from any ownership in this parcel.

Plaintiff not being the wife of James Bell, the grantees became tenants in common of this property. (*Perrin* v. *Harrington*, 146 App. Div. 292; *Bambauer* v. *Schleider*, 176 id. 562.) Presumptively, their interests in common were equal. (*Jackson* v. *Moore*, 94 App. Div. 504.) This presumption is not rebutted by the fact that no part of the consideration was paid by the plaintiff, for the inclusion of her name in the conveyance as one of the grantees establishes conclusively that she acquired some interest in the premises. To hold to the contrary would be to disregard section 94 of the Real Property Law which provides: " A grant of real property for a valuable consideration, to one person, the consideration being paid by another, is presumed fraudulent as against the creditors, at that time, of the person paying the consideration, and, unless a fraudulent intent is disproved, a trust results in favor of such creditors, to an extent necessary to satisfy their just demands; but the title vests in the grantee, and no use or trust results from the payment to the person paying the consideration, or in his favor, unless," etc. The exceptions are not material here. As to this particular parcel, therefore, the plaintiff is a tenant in common with the heirs of James Bell with the usual rights of such a tenant in common.

The judgment should, therefore, be modified by striking out from the clause of the judgment relating to the property at 158 Glenwood avenue, the following words: " But as such tenant in common, and having never at any time ever paid any money or other thing in value by way of consideration for the purchase price of said real property and premises, she has no legal right, title or interest of whatsoever nature, kind and description, legal or equitable, in and to said real property and premises," and as modified should be affirmed.

The fourth finding of fact should be reversed and a new finding made in lieu thereof differing from the original finding only in

inserting in subdivision 2 contained in said finding after the word " also " the words " an undivided one-half interest in," and the tenth conclusion of law should be reversed, without costs.

All concur, except KRUSE, P. J., and DAVIS, J., who dissent, each, in a separate opinion.

KRUSE, P. J. (dissenting):

I am inclined to the opinion that the plaintiff is entitled to dower. The divorce she obtained against Kelsey, her first husband, in the State of Pennsylvania, is valid in that State. She was married to Bell in that State after such divorce. Her marriage to Bell is valid in that State. Bell knew at that time that she had been married before and knew of her Pennsylvania divorce. There is nothing to indicate that Bell was imposed upon. Her right to be endowed in Bell's real estate here should not be questioned either by Bell or his heirs at law. (*Van Voorhis* v. *Brintnall*, 86 N. Y. 18, 26.)

The general rule is that a contract entered into in another State or country, if valid there, is valid everywhere. While the Pennsylvania divorce is not effective in this State as against her first husband, then a resident of this State and not personally served with process, and does not affect the civil status of any of the parties in this State, it would seem that as regards property rights, such as here under consideration, the divorce and marriage in the State of Pennsylvania should be regarded as valid and effective here. I find nothing to the contrary in *Ball* v. *Cross* (231 N. Y. 329); *Hubbard* v. *Hubbard* (228 id. 81) or *Winston* v. *Winston* (165 id. 553). Corpus Juris states the general rule thus: " If a marriage was valid in the State in which it was contracted, its validity will be recognized in another State so as to entitle the woman to dower in lands in the latter State, although the marriage would not have been valid if contracted in such State." (19 C. J. § 21, p. 463.)

If I am right thus far it would seem to follow that the deed to the plaintiff and Bell as tenants by the entirety would likewise entitle the plaintiff to the entire title to the real property thus conveyed, Bell having died.

DAVIS, J. (dissenting):

The precise question here presented seems not to have been decided in this State. I deem it of great importance in view of the very complex marital relations existing due to the present chaotic state of the law in the different jurisdictions in this country.

The plaintiff, claiming to have been driven from her home in Rochester by her husband, one Kelsey, to whom she was married in this State, went to Pennsylvania where she obtained a judgment of divorce, though not upon the personal service of process. Subse-

quently she married James Bell, who went to Pennsylvania to have the ceremony performed. He knew that she had a husband living in this State, and that she had obtained the divorce while he was a resident here. Evidently, too, he knew that it would be a bigamous marriage if the ceremony was performed in New York. There is evidence that they intended to reside in Pennsylvania or elsewhere, but returned to this State because the plaintiff's parents were residing in Rochester and wished her to return. The marriage thus contracted was valid in the State of Pennsylvania. (*Van Voorhis* v. *Brintnall*, 86 N. Y. 18; *Thorp* v. *Thorp*, 90 id. 602.)

To the credit of Bell be it said that he never questioned the validity of the marriage. They lived together in an apparently honorable relation, and the marriage was given full recognition by Bell and his family, not only in their social life, but by the solemn act of one of the defendants in making and by Bell in taking a deed to himself and plaintiff as husband and wife.

The former husband, Kelsey, remarried before Bell died. That might indicate that the original marriage was either invalid or had become dissolved for some reason. Bell continued to live with the plaintiff thereafter until he died.

Our courts are not required to give full faith and credit to judgments of the courts of other jurisdictions in matrimonial actions where personal service of process was not made on the defendant, a resident of this State (*Haddock* v. *Haddock*, 201 U. S. 562; *Winston* v. *Winston*, 165 N. Y. 553); but they will deal with such foreign judgments and give them the efficacy and effect they would deem rightful and salutary in view of the public policy of the State. Whether or not the operation of such decree in a given case will contravene the policy, or wrong or injure citizens of the State is exclusively for its courts to determine. (*Hubbard* v. *Hubbard*, 228 N. Y. 81.) No absolute and unyielding rule can well be adopted applicable to all cases. Therefore, we may say that a marriage contracted subsequent to such a divorce will not be recognized as valid in this State as against the former husband or any innocent party. Kelsey was not required to recognize the validity of the divorce and the subsequent marriage of his wife. He could not thereby be deprived of any status or vested property rights. Had his wife died intestate, he would have been entitled to letters of administration and to share in her estate. (*Matter of Caltabellotta*, 183 App. Div. 753.) Likewise, the children of the first marriage, had there been any, would be entitled to inherit the property of their mother in this State to the exclusion of any born of the subsequent marriage. (*Olmsted* v. *Olmsted*, 190 N. Y. 458; affd., 216 U. S. 386.) And if there had been a wife

by prior marriage to Bell, the rights of the plaintiff being inferior, must yield. (*Price* v. *Price*, 124 N. Y. 589; *DeFrance* v. *Johnson*, 26 Fed. Rep. 891; 19 C. J. 463.)

But public policy does not necessarily require that as to the parties a marriage valid where contracted shall be deemed invalid because of migration from the original domicile, nor as to those in privity with them. The plaintiff may not impeach the judgment of divorce and make claim against the property of Kelsey. (*Matter of Swales*, 60 App. Div. 599; affd., 172 N. Y. 651; *Starbuck* v. *Starbuck*, 173 id. 503; 19 C. J. 378.) At common law as against all but Kelsey, Bell would have become vested with a right to plaintiff's property. (*Cropsey* v. *McKinney*, 30 Barb. 47.) Bell in the State of Pennsylvania owed plaintiff the obligation to provide for her and any children they had. As long as he recognized her as his wife I doubt if he could avoid that obligation by taking up a residence with them here. (*Johnstone* v. *Allen*, 6 Abb. Pr. [N. S.] 306; 21 Cyc. 1233.) We can hardly say that by moving to this State plaintiff lost entirely the legal status she had in Pennsylvania and that here Bell owed her no greater obligation than he did to a wanton who had attracted his passing fancy. Yet that is the effect of deciding that this marriage was at all times invalid when the parties came to this State.

If Bell contracted the marriage in good faith without knowledge of the facts, the marriage was voidable and he might have it annulled. (Civ. Prac. Act, § 1134.)\* If there were children, as long as the marriage was voidable only, they would be legitimate (7 C. J. 940), and entitled to share in his estate (*Van Voorhis* v. *Brintnall, supra; Moore* v. *Hegeman*, 27 Hun, 68; affd., 92 N. Y. 521); and if Bell obtained annulment of the marriage contracted by him in good faith, they would be deemed his legitimate children. (Civ. Prac. Act, § 1135, subd. 6.)† Such is the policy of our law to protect the innocent and prevent wrong and injustice.

While the remedies in all matrimonial cases in this State since the adoption of the Constitution have been regulated by statute, which conferred powers on the courts, and the remedies given have been in a general way only those provided by statute, the courts have at times applied equitable principles in dealing with the parties and the situation. (*Wightman* v. *Wightman*, 4 Johns.

---

\* See, also, Code Civ. Proc. § 1745, as amd. by Laws of 1913, chap. 444; since amd. by Laws of 1919, chap. 202.— [REP.

† See, also, Code Civ. Proc. § 1745, as amd. by Laws of 1913, chap. 444; since re-enacted and amd. as Code Civ. Proc. § 1749, subd. 6, by Laws of 1919, chap. 202.— [REP.

16

Ch. 343; *Ferlat* v. *Gojon*, Hopk. Ch. 478; *Griffin* v. *Griffin*, 47 N. Y. 134.) Suppose that Bell in his lifetime had sought to annul the marriage on the ground that the plaintiff had another husband living at the time it was contracted, and a defense was interposed; let us assume further that it developed on the trial he had known all the facts concerning the divorce and its invalidity when he contracted the marriage, but lived with her, introducing her as his wife and taking property in their joint names as husband and wife, continuing such a relation after he had known her husband was remarried — under such circumstances he would not be granted relief in an action to annul the marriage. (*Taylor* v. *Taylor*, 63 App. Div. 231; 169 N. Y. 601; *Berry* v. *Berry*, 130 App. Div. 53; *Stokes* v. *Stokes*, 128 id. 838; revd., on other grounds, 198 N. Y. 301; *Hall* v. *Hall*, 139 App. Div. 120; *Kaufman* v. *Kaufman*, 177 id. 162.)

Under the rule laid down in the authorities just cited Bell would have been equitably estopped from raising the question of the invalidity of his marriage. By the same rule he would not have been heard in an action brought by him to set aside the deed to his wife as a tenant by the entirety. Had he attempted to convey any of the lands he owned, it is doubtful if any lawyer would have passed title unless his wife joined in the deed. If he was estopped from questioning the title of the plaintiff, then his heirs and personal representatives are likewise estopped (*Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 528; *Tefft* v. *Munson*, 57 N. Y. 97; *Jacobs* v. *Fowler*, 135 App. Div. 713), for they can take no better title than he can give. Their right to his property depends upon the statutes. They take it in subordination to such legal and equitable claims as exist against it. (*Hauselt* v. *Patterson*, 124 N. Y. 349; *Lyons National Bank* v. *Shuler*, 115 App. Div. 859; 18 C. J. 940, 947.) If plaintiff had lived with Bell and helped accumulate the property, it would be inequitable and unjust to deprive her of a share therein.

For the reasons stated I think that public policy demands that the marriage be regarded valid as to Bell and those claiming under him. It follows that the woman with whom he contracted a marriage, valid where the contract was entered into, is entitled to dower in his real estate and to hold as owner the property deeded to herself and husband as tenants by the entirety. I favor reversal of the judgment.

Judgment modified as regards the conveyance to James Bell and the plaintiff and fourth finding of fact reversed and new finding made in lieu thereof, as indicated in the opinion of SEARS, J., and as so modified the judgment is affirmed, without costs of this appeal to either party.