### In re TAKIS.

### BINGHAM v. WILSON et al.

Circuit Court of Appeals, Second Circuit. June 11, 1928.

No. 207.

1. **Bankruptcy ⊂⊃267(1)—Amount of rent payments made by bankrupt is properly deducted from proceeds of sale of lease before co-owner of lease is entitled to anything.**

Where bankrupt had leased property, using corporation in which he owned all of stock as

co-owner of lease, payment of rent which was necessary to preserve lease was proper charge against corporation as co-owner, so that amount thereof is properly deducted from proceeds of sale of lease by trustees in bankruptcy before receiver of corporation is entitled to anything.

2. **Tenancy in common ⊂⊃32—Tenant may occupy property without liability to cotenant, and is entitled to contribution for necessary expenditures.**

Tenant may occupy premises without liability to cotenant, so long as he does nothing to oust or exclude such cotenant, and, notwithstanding such occupancy, he is still entitled to contribution for expenditures necessary to preserve property.

3. **Bankruptcy ⊂⊃267(1)—Corporation without bank account, which was co-owner of lease with bankrupt, held to have no real interest in leasehold.**

Corporation without bank account, in which bankrupt owned oil stock, and which was co-owner of lease with bankrupt, *held* to have no real interest in leasehold, so as to be entitled to interest in proceeds of sale of lease; it being most probable that corporation was only joined in lease to furnish additional credit for bankrupt.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Costis Takis, trading under the firm name of the Goody Shop, bankrupt. From an order directing E. Bright Wilson and others, as trustees in bankruptcy, to pay the sum of $2,527.66 to Colton Bingham, temporary receiver of the Goody Shop Realty Company, Inc., in full of his interest in net proceeds of the sale of certain leases, Colton Bingham appeals. Affirmed.

See, also, 18 F.(2d) 777.

Dunnington, Walker & Gregg and Stroock & Stroock, all of New York City (S. M. Stroock and Robert L. Luce, both of New York City, of counsel), for appellant.

Archibald Palmer, Edward T. Corcoran, and Marcus Helfand, all of New York City, for trustees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The Goody Shop Realty Company, Inc., is a real estate corporation organized in 1919 by Costis Takis. He owned all its stock and the corporation at one time owned a building at Eighth avenue and Eighteenth street, New York, which was subject to a mortgage. Upon foreclosure of the mortgage a deficiency judgment was entered against it and on March 21, 1927, Colton Bingham was appointed receiver of the corporation in seques-

tration by the Supreme Court of the state of New York.

By instrument dated April 13, 1922, the Columbia Bank, then being a tenant of a portion of premises 507 Fifth avenue, New York City (which had theretofore been used as a bank), leased said portion to Takis and Goody Shop Realty Company, Inc., for a term commencing May 15, 1922, and expiring April 29, 1928, at a monthly rental of $3,958.33, being at an aggregate annual rental of $47,500. Likewise on April 13, 1922, James B. Ford, the owner of the fee of 507 Fifth avenue, further leased the same premises to Takis and the Goody Shop Realty Company, Inc., for an additional term, which was to begin on April 30, 1928, at the time of the expiration of the former lease, and to expire April 30, 1943. This lease by Ford provided that the annual rental should be at the rate of $47,500, and should be payable monthly in advance, and required the rental from April 30, 1928, to June 30, 1928, amounting to $8,048.60, to be paid simultaneously with the execution and delivery of the lease. Takis personally paid said sum of $8,048.60 and also paid the current rent under the first lease by the Columbia Bank, except for certain arrears included in the sum of $20,896.09, which accumulated shortly before his bankruptcy. Each lease to Takis and Goody Shop Realty Company, Inc., provided that the demised premises should be used solely for the sale of cakes, candies, soda fountain drinks, and for what is commonly known in the city of New York as a tearoom.

After these leases were given, Takis spent $90,000 of his own money in fitting up the premises for use as a tearoom. This $90,000 included $40,000 expended for structural changes in the premises and $50,000 for fixtures.

On October 25, 1926, Takis was adjudicated a bankrupt and an order was made appointing trustees to administer the estate. The leases and fixtures were thereafter sold by the bankruptcy court for $79,000, free from the lien or claim of the Goody Shop Realty Company and its receiver. Of this sum $20,896.09 was required to satisfy arrears of rent and taxes due the landlord, and $5,000 to pay the bankrupt estate for the agreed value of the fixtures which Takis had erected for the tearoom. There remained of the purchase price $53,103.91, one-half of which Bingham, as receiver, sought to reclaim in the bankruptcy court upon the theory that Goody Shop Realty Company, Inc., was a cotenant of the lease with the bankrupt and entitled thereby to one-half the net proceeds of the lease.

Takis had used the Goody Shop Realty Company, Inc., of which he held all the stock, to take title to the property on Eighth avenue and Eighteenth street. The company had no bank account, never paid anything toward the rent, renovations, or fixtures at 507 Fifth avenue, and had no part in the business conducted there. Because of this, the trustees of the estate of Takis have contended that the Goody Shop Realty Company, Inc., cannot share in the proceeds until there is restored to the trustees, as the successors in title of Takis, the $40,000 which he expended for improvements and the $8,048.60 which he paid for advance rent on the second lease, the term of which was to begin April 30, 1928. If these sums, aggregating $48,048.60, be deducted from the $53,103.91 on hand, there would remain $5,055.31, one-half of which is $2,527.66.

The referee in bankruptcy held that the money which went into advance rent and improvements was reflected in the selling price, and accordingly should equitably be returned to the estate of Takis before allowing any part of the proceeds of sale to Bingham as receiver. The referee accordingly ordered a payment of only $2,527.66 to the receiver, which was one-half of the balance after the above deductions, and upon a petition for review by Bingham the decision of the referee was sustained by the District Court. From the order of the District Court the receiver alone appealed.

[1] One important consideration does not seem to have been regarded by the court below, or suggested on appeal, and that is that there was a rental under the first lease of $3,958.33 per month, or $47,500 per year, which must have been paid by Takis from April, 1922, until the time of sale five years afterwards, except for the sum of $20,896.09, which represented various arrears of rent and taxes due the landlord that have been paid from the proceeds of sale. Although the exact amount of rents paid by Takis is not shown in the record, it must have amounted to over $200,000 during the five years in question, and certainly far exceeded, not only $53,103.91, but the whole proceeds of sale. In view of this, there can be nothing coming to the receiver. Payment of rent was necessary to preserve the lease, and was, therefore, always a proper charge against a co-owner of the lease.

[2] The right to charge the amount expended for the improvements is more questionable,

both because there is difficulty in imputing a consent on the part of the corporation, even though Takis owned all its stock, and also because any return which the company should make would depend, not on the amount paid by Takis for the improvements, but the value added to the leasehold thereby. Clapp v. Nichols, 31 App. Div. 531, 52 N. Y. S. 128; Ford v. Knapp, 102 N. Y. 135, 6 N. E. 283, 55 Am. Rep. 782;_ Wilson v. Lank, 12 Del. Ch. 413, 107 A. 772. The only reason that can be given for not allowing a deduction from the proceeds of sale of the rents paid by Takis, when they were necessarily paid to preserve the estate, is that Takis occupied the premises and should contribute the value of the use and occupation by way of set-off. But a tenant can thus occupy without liability to his cotenant, so long as he does nothing to oust or exclude the cotenant. And, notwithstanding such occupancy, he is still entitled to contribution for expenditures necessary to preserve the property. Le Barron v. Babcock, 122 N. Y. 153, 25 N. E. 253, 9 L. R. A. 625, 19 Am. St. Rep. 488; Adams v. Bristol, 126 App. Div. 660, 111 N. Y. S. 231.

[3] But the relation of the parties precludes any co-ownership or other interest on the part of the Goody Shop Realty Company, Inc. While there is a presumption that two persons jointly holding a legal title have the relation of owners in common (Bell v. Little, 204 App. Div. 235, 197 N. Y. S. 674, affirmed 237 N. Y. 519, 143 N. E. 726), just as there is a presumption that a person holding title to a lot of land is the real owner, it is nothing but a presumption. In either case any party may, of course, be a mere dummy, with the beneficial title vested in some one else. Where a corporation, as here, had no bank account, concededly had no interest in the tearoom conducted by Takis on the premises, and where the latter paid for everything, and the leases were taken for and only permitted a use in the restaurant business, it seems most probable that the corporation had no real interest in the leasehold, and was only joined in the lease to furnish additional credit for Takis when he wished to secure it. Doubtless the company, as well as Takis, was liable to the landlord upon the lease, and so we have in effect held on a former appeal. In re Takis (C. C. A.) 18 F.(2d) 777. But, as between the parties, the corporation seems to have been no more than a dummy, entitled to no interest in the proceeds of sale.

We should not even allow the $2,527.66

to it, if the trustees had taken an appeal; but, as they have not, the order must stand, and it is accordingly affirmed.