ANNA KRAUSE, Respondent, *v.* BERNARD KRAUSE, Appellant.

Argued November 15, 1939; reargued January 15, 1940; decided March 12, 1940.

*David Krause, David Altschul* and *Milton Altschul* for appellant. The second defense is sufficient in law. (*Lefferts*

v. *Lefferts,* 263 N. Y. 131; *Fischer* v. *Fischer,* 254 N. Y. 463; *Hubbard* v. *Hubbard,* 228 N. Y. 81; *O'Dea* v. *O'Dea,* 101 N. Y. 23; *Hunt* v. *Hunt,* 72 N. Y. 217; *People* v. *Baker,* 76 N. Y. 78; *Stevens* v. *Stevens,* 273 N. Y. 157; *Holmes* v. *Holmes,* 4 Lans. 388; 57 Barb. 305; *McDermott* v. *McDermott,* 252 App. Div. 875; *May* v. *May,* 251 App. Div. 63; *Shannon* v. *Shannon,* 247 App. Div. 790; *Coakley* v. *Coakley,* 161 Misc. Rep. 867; *Ashdown* v. *Ashdown,* 178 N. Y. Supp. 565; *Vose* v. *Vose,* 280 N. Y. 779.)

*A. Albert Bennin* and *I. Joel Komarow* for respondent. Defendant having invoked the jurisdiction of the court of the State of Nevada and having procured a decree to be entered in his own favor, cannot be heard to impeach or attack its validity. (*Brown* v. *Brown,* 242 App. Div. 33; 266 N. Y. 532; *Hynes* v. *Title Guarantee & Trust Co.,* 273 N. Y. 612; *Stevely* v. *Stevely,* 254 App. Div. 743; *Starbuck* v. *Starbuck,* 173 N. Y. 503; *Matter of Swales,* 60 App. Div. 599; 172 N. Y. 651; *Matter of Morrison,* 52 Hun, 102; 117 N. Y. 638; *Simmonds* v. *Simmonds,* 78 Misc. Rep. 571; *Kaufman* v. *Kaufman,* 177 App. Div. 162; *Nathan* v. *Nathan,* 150 Misc. Rep. 895; 246 App. Div. 162; *People ex rel. Shrady* v. *Shrady,* 47 Misc. Rep. 333; *Harris* v. *Harris,* 197 App. Div. 646; *Kelsey* v. *Kelsey,* 204 App. Div. 116; 237 N. Y. 530; *Van Dover* v. *Van Dover,* 247 App. Div. 813; *Campbell* v. *Campbell,* 164 Misc. Rep. 647.)

FINCH, J. This is an action for separation brought by a wife in which she seeks support. The husband seeks to avoid liability to plaintiff by alleging the invalidity of a Nevada divorce which he obtained from his first wife. May he avail himself of such a defense?

The answer interposes two separate and distinct defenses. It is only the second defense with which we are concerned.

The facts presented by the defense are as follows: Defendant and his first wife, domiciled in this State, were married here in 1905. There are two children by that marriage. In 1932 the present defendant, while retaining his residence in this State, made a visit to Reno, Nev., where he invoked

the jurisdiction of the courts of that State and obtained a decree of divorce from his first wife, who neither entered an appearance nor was personally served in that action, and who at all times has remained a resident of this State. (Cf. *Glaser* v. *Glaser*, 276 N. Y. 296.) Consequently this divorce against the first wife is not recognized by the courts of this State. (*Winston* v. *Winston*, 165 N. Y. 553; *Hubbard* v. *Hubbard*, 228 N. Y. 81; *Lefferts* v. *Lefferts*, 263 N. Y. 131.) The subsequent marriage between plaintiff and defendant, therefore, was void for the incapacity of defendant to marry. But none the less plaintiff and defendant participated in a complete marriage ceremony and did live together as man and wife for six years pursuant thereto, after which time defendant abandoned plaintiff, who now brings this action. Defendant entered the defense already noted, viz., that he lacked capacity to marry plaintiff because the court, which upon his petition purported to accord him a divorce from his first wife, lacked jurisdiction to act in the premises. Upon motion of plaintiff Special Term struck out the defense as insufficient in law and cited *Starbuck* v. *Starbuck* (173 N. Y. 503) in support of its decision. The Appellate Division affirmed by a divided court, the majority citing *Brown* v. *Brown* (242 App. Div. 33; affd., 266 N. Y. 532), and the minority citing *Stevens* v. *Stevens* (273 N. Y. 157). Defendant appeals upon the following question, certified by the Appellate Division to this court: " Is the second, separate and distinct defense in the amended answer, sufficient in law on the face thereof?"

The question upon this appeal, therefore, depends upon whether defendant husband may now be heard to assert in this action, brought by his second " wife," that the judgment of divorce which he sought and obtained failed of its purpose and thereby did not give to the defendant that freedom to remarry which he appeared to possess by virtue of said judgment.

In general, a person who invokes the jurisdiction of a court will not be heard to repudiate the judgment which that court entered upon his seeking and in his favor.

(1 Freeman on the Law of Judgments [5th ed.], § 320; cases collated in 3 A. L. R. 535.) The rule has been applied in this State in cases where property rights arising out of the marriage have been involved. (*Starbuck* v. *Starbuck*, *supra; Bell* v. *Little*, 204 App. Div. 235; affd., 237 N. Y. 519; *Hynes* v. *Title Guarantee & Trust Co.*, 273 N. Y. 612.) It is said, however, that in *Stevens* v. *Stevens* (*supra*) we have answered the question upon which the case at bar turns. But in the *Stevens* case an action for separation was brought in this State by a wife against her husband who had previously secured a divorce in a Nevada court which was admittedly without jurisdiction. The husband counterclaimed for a divorce. At the trial the wife sought to defeat the counterclaim by introducing in evidence the Nevada divorce obtained by the husband in order to put him in a position where he could not maintain his claim for divorce because he was no longer the husband of the wife. Upon the facts of that case this court held that the husband was not prevented from maintaining the action for divorce despite the prior Nevada decree which he had obtained. " Our conclusion is that the award of the Nevada decree to the husband should have no effect upon the right of either party to a full adjudication in this action upon the conceded fact of their existing marital status." (273 N. Y. at p. 158.) The court clearly indicated the effect of the decision when it stated that " We need not inquire what the result would be in some further event that has not happened." (273 N. Y. at p. 159.) Thus, the very language of the opinion of this court in the *Stevens* case indicated that it would not control a different situation. In the *Stevens* case the *position* which the husband assumed in the proceedings in this State was inconsistent with the decree which he had obtained in Nevada only in the sense that as part of a cause of action for divorce it is necessary to prove the marriage. (*Fischer* v. *Fischer*, 254 N. Y. 463; *Jones* v. *Jones*, 108 N. Y. 415.) But the *action* which he sought to take was parallel with that which he had previously undertaken in the Nevada proceedings in that the

object of both was the same, to wit, termination of the marriage with his wife. Such is not the situation in the case at bar where the *action* which defendant seeks to take is inconsistent with the result purportedly achieved by the invalid Nevada decree.

In *Vose* v. *Vose* (280 N. Y. 779) the plaintiff in a prior action was allowed to repudiate the judgment of divorce which he had obtained. In that case neither of the parties ever left this State and the judgment which was repudiated was that of a divorce by a Mexican court which had not even the slightest semblance of jurisdiction to act in the premises. The husband and the wife in that case had merely entered into a collusive agreement to obtain from a court of a foreign country in which correspondence through the mails constituted the only nexus between either of the interested parties and the court which entered the judgment of divorce. In this case it may be observed also that section 51 of the Domestic Relations Law (Cons. Laws, ch. 14) interdicts any agreement between a husband and wife " to alter or dissolve a marriage or to relieve the husband from his liability to support his wife." It is urged, on the other hand, that in *Brown* v. *Brown* (*supra*) we took a position which does not permit a defendant under the circumstances of the case at bar to repudiate his obligation to support the wife. The *Brown* case may also be said to have involved rights arising out of a contract whose validity depended upon the existence of the marriage relationship so that the exact ground upon which to place that decision may be said to be in dispute.

We come, then, to a consideration of the principle applicable in the case at bar. We cannot lose sight of the fact that the present defendant was himself the party who had obtained the decree of divorce which he now asserts to be invalid and repudiates in order that he may now disown any legal obligation to support the plaintiff, whom he purported to marry. To refuse to permit this defendant to escape his obligation to support plaintiff does not mean that the courts of this State recognize as valid a judgment

of divorce which necessarily is assumed to be invalid in the case at bar, but only that it is not open to defendant in these proceedings to avoid the responsibility which he voluntarily incurred.

It is conceded that the estoppel which is invoked against the present defendant is not a true estoppel as that term is ordinarily understood, although the effect is the same in the case at bar.

But it is urged that even though the prior authorities in this State do not compel a contrary result, a different conclusion should be reached as a matter of principle. It is said that public policy requires that the interest of the State in the first marriage be protected even though that may also give to the individual defendant an incidental advantage to which he is not entitled in his private right. Thus defendant seeks to avoid the obligation which he has purported to undertake to support his second wife, upon the pretext that such is inconsistent with his obligations toward his first wife. Objection upon this score is fully met by the fact that the needs of the first wife are to be taken into account in arriving at the ability of defendant to support plaintiff in the case at bar. Defendant would altogether disavow any obligation toward this plaintiff because of his obligation to his first wife. The result which we reach here is the only one which awards justice to this plaintiff, prevents her from becoming a public charge if she should be impecunious and at the same time protects the first wife in adequate degree. Thus there is complete observance of not only the interest of the State in the protection of the first marriage, but also of the other interest of the State that marriage obligations shall not be lightly undertaken and lightly discarded.

Nothing in this decision should be taken to mean that because the defendant may not in these proceedings avail himself of the invalidity of his Nevada decree he is not the husband of his first wife. On the contrary, the very theory that defendant is precluded in *these* proceedings presupposes that the true situation is the contrary of that which he may show in the case at bar.

It follows, therefore, that the order appealed from should be affirmed, with costs, and the question certified answered in the negative.

LOUGHRAN, J. (dissenting). The complaint states in orthodox form a cause of action by a wife against her husband for a separation. " In every action for separation the primary fact to be proved is an existing marriage between the parties." (*Fischer* v. *Fischer*, 254 N. Y. 463, 466.)

In his answer the defendant pleads that he has always been domiciled in this State where he first married a wife who is still living, and that the status alleged in the complaint was taken up after a divorce which he obtained against his first wife in another State through an action wherein she was not personally served with process and did not appear. From these allegations, as nobody denies, the inference of law follows that the plaintiff is not and never was the wife of the defendant. (Dom. Rel. Law, § 6; *Winston* v. *Winston*, 165 N. Y. 553. Cf. *Glaser* v. *Glaser*, 276 N. Y. 296.)

Nevertheless, the court now holds that the plaintiff may succeed in this matrimonial action for a separation from the defendant as her husband, though the court also certifies that nothing in its decision is to be taken to mean that the defendant is not the husband of his first wife. This ruling signifies that, because the defendant took it upon himself to marry the plaintiff and lived with her as her husband, he will not now be heard to contradict himself by asserting the truth that he was all the time the husband of another. If the question were *res integra*, this disposition would perhaps be right, seeing that all estoppels run against a showing of the truth. But I think that view of the defendant's position is not open to us.

One of the last of our relevant cases is *Davis* v. *Davis* (279 N. Y. 657). There a man brought an action to annul his marriage to a woman who had secured a similarly void foreign divorce decree. With full knowledge of the circumstances surrounding the decree, he had induced her to

marry him in honest reliance upon it. A child had been born of their union. On those facts and on the reasoning of *Kaufman* v. *Kaufman* (177 App. Div. 162) the woman asked the court in its sound discretion to estop the man from questioning his marriage to her. The man had judgment declaring that marriage wholly void on the ground that at the time the woman essayed it she had a husband living and undivorced.

A claim of equitable preclusion much the same as that advanced in the *Davis* case was also rejected in *Fischer* v. *Fischer* (*supra*) and in *Lefferts* v. *Lefferts* (263 N. Y. 131). Unless these recent cases can now be distinguished we cannot contrive a *quasi*-estoppel in favor of the present plaintiff. It is quite true that in the *Fischer*, *Lefferts* and *Davis* cases the party who sought to impeach the void foreign divorce decree was not (as in this case) the party who procured it. This chance circumstance may not, I think, be here given controlling effect consistently with the state of our decisions.

In *Stevens* v. *Stevens* (273 N. Y. 157) we held that a void divorce decree secured in another State by a husband did not preclude him from maintaining a counterclaim for divorce in an action brought by his wife for a separation. There, however, neither party had gone through another marriage ceremony and so we did not in that case come to any question as to what the result would have been in such a predicament. So, in *Vose* v. *Vose* (280 N. Y. 779), we held that a wife could maintain an action for a separation from her husband in the face of a void foreign divorce decree obtained by her against him, there being again no marriage involved other than that of the parties.

In *Starbuck* v. *Starbuck* (173 N. Y. 503) a wife who had procured a void foreign divorce decree was held to be thereby precluded from claiming dower in the lands of her husband who had remarried; in *Bell* v. *Little* (204 App. Div. 235; 237 N. Y. 519) a wife who had procured such a decree was on that account denied dower in the lands of a man she had married thereafter; in *Brown* v. *Brown* (242 App. Div. 33; 266 N. Y. 532) a second wife's action on a

contract dependent on the validity of her marriage prevailed over a plea that a prior marriage of the defendant husband had not been dissolved by a foreign divorce decree obtained by him; and in *Hynes* v. *Title Guarantee & Trust Co.* (273 N. Y. 612), where a second wife sued on a contract that she was to have dower in lands owned by a corporation controlled by her husband, we held that the invalidity of his foreign divorce from his first wife would be no defense.

All the cited cases divide themselves into two categories. *Fischer* v. *Fischer, Lefferts* v. *Lefferts, Stevens* v. *Stevens, Davis* v. *Davis* and *Vose* v. *Vose* were matrimonial actions— cases that primarily involved a marital status asserted as such. In a case of that character the court has been constrained to declare the real fact of the relationship of the man and woman in accordance with the public policy of the State no matter what the consequent hardship to either of them.

*Starbuck* v. *Starbuck, Bell* v. *Little, Brown* v. *Brown* and *Hynes* v. *Title Guarantee & Trust Co.* were not matrimonial actions. These were private suits. The claim in each case — though predicated of a marriage — was personal to an individual party. Hence room was found for consideration of equitable inducements conceived as affecting only the several parties to the litigation. (So, *Matter of Swales,* 60 App. Div. 599; 172 N. Y. 651.)

Once you accept the rigor of our settled applicable rule of Conflict of Laws there is no disputing that the foregoing categories have a warrant that runs deep in the law. " Marriage being a public institution of universal concern, and each individual marriage or its dissolution affecting the rights not only of the husband and wife but of all other persons, the court sitting in a divorce cause should regard the public as a party thereto, and so far protect its interests as not to suffer the decree for dissolution or suspension to pass contrary to the real facts and justice of the case." (2 Bishop on Marriage, Divorce and Separation, § 480.) For the same reason judgment in a matrimonial action may not go by default and (though the defendant be absent) a hearing must none the less be had therein that in essence

is a trial. (See *Redfield* v. *Critchley*, 277 N. Y. 336, 341.) In any other view, even a valid marriage might in effect be dissolved or altered by the parties themselves contrary to the declared public policy of the State. (Dom. Rel. Law, § 51.) No comparable consequences have been apprehended where (as in the cases of the second category) the action was not a matrimonial action but had for its first objective some collateral advantage claimed individually by a party in the role of a spouse.

The present plaintiff does not sue for support merely. A wife has no such remedy in this State. (*Johnson* v. *Johnson*, 206 N. Y. 561.) This action is the purely statutory action for a separation. (Civ. Prac. Act, art. 69.) Any suggestion that the court should in some fashion take account of the needs of the defendant's first wife (who is not a party) cannot alter the case. This action is a matrimonial action. (Civ. Prac. Act, art. 70.) It belongs in the first of the foregoing categories.

My conclusion is that the defense here challenged is valid. It may be that the law will be bettered by the contrary ruling that the defendant must stand by a relationship with the plaintiff which she is free (and always was free) to nullify. (*Lefferts* v. *Lefferts, supra; Davis* v. *Davis, supra.*) But it is not the function of courts to make such supposed improvements. " Their general duty is not to change but to work out the principles already sanctioned by the practice of the past. No one supposes that a judge is at liberty to decide with sole reference even to his strongest convictions of policy and right. His duty in general is to develop the principles which he finds, with such consistency as he may be able to attain." (HOLMES, J., in *Stack* v. *N. Y., N. H. & H. R. R. Co.*, 177 Mass. 155, 158.)

Perhaps a word should be added respecting *Guggenheim* v. *Guggenheim* (201 N. Y. 602) and *Kelsey* v. *Kelsey* (204 App. Div. 116; 237 N. Y. 520). The foreign divorce decree involved in the *Guggenheim* case was valid in this State. (See *Guggenheim* v. *Wahl*, 203 N. Y. 390.) In the *Kelsey* case each of the parties to the void foreign decree had remarried and (since either party was thus as guilty of

adultery as was the other) the husband's action against the wife for a divorce was not to be sanctioned. (See Civ. Prac. Act, § 1153, subd. 4.)

The orders should be reversed, without costs, and the question certified answered in the affirmative.

LEHMAN, Ch. J., RIPPEY and Sears, JJ., concur with FINCH, J.; CONWAY, J., concurs in result; LOUGHRAN, J., dissents in opinion in which LEWIS, J., concurs.

Order affirmed, etc.