SUSAN OLDHAM, Plaintiff, *v.* RALPH C. OLDHAM, Defendant.

Supreme Court, Special Term, New York County, March 30, 1940.

*Sydney R. Snitken,* for the plaintiff.

*Walter A. Caddell,* for the defendant.

McLAUGHLIN, J. The plaintiff sues the defendant for separation. She had been previously married to one Paul Dube and while living separate and apart from him met the defendant. Thereafter she

moved to Canada. Her previous husband was a Canadian citizen and a resident of the Province of Quebec. While in Canada it seemed to be impossible for her to enter the United States but finally, with the defendant's aid, she received a visa and came to New York. She immediately went to Reno, Nev., and there obtained (based upon service by publication) a divorce from her husband.

The record is replete with evidence showing that the plaintiff and the defendant both took part in obtaining this Nevada divorce. In fact, if it were not for the efforts made by the defendant on her behalf, the plaintiff could not have re-entered this country. He not only paid the legal expenses of obtaining the decree, but also expended what moneys were necessary to have the plaintiff go to and from Nevada and to pay for her board and other expenses while there awaiting the granting of the decree.

It follows that, in so far as the arrangement to obtain this divorce is concerned, the defendant is just as much a principal as the plaintiff, even though he was not a legal party to the action of divorce. Moreover, the obtaining of the decree was for his benefit and he spent these moneys in order that she might get the divorce, and as a result marry him. This is apparent when we consider that, immediately after her return from Nevada, he and the plaintiff went to her sister's home in Union City, N. J., and there went through a marriage ceremony.

In so far as any estoppel is concerned, it seems quite clear that if the plaintiff could be estopped from contesting the validity of the decree of the Nevada court, so, too, the defendant should also be estopped, because he and she were both principals in the acts that were necessary for the obtaining of a decree of divorce. Whatever doubt there might be as to the application of the doctrine of estoppel to contest the validity of a divorce by one of the parties to it, that question was settled by the Court of Appeals on March 12, 1940, in the action of *Krause* v. *Krause* (282 N. Y. 355). That decision holds that a party to a Nevada decree obtained by publication cannot question the validity of the Nevada judgment. It is only reasonable to say that one who participates in the wrongful act of obtaining an invalid decree is just as legally bound by the effects and consequences of his action in making it possible to obtain such an invalid decree. It follows that if the plaintiff may not question the validity of the Nevada divorce decree, so, too, the defendant may not do so. (*Kaufman* v. *Kaufman*, 177 App. Div. 162, 165.) The Court of Appeals in *Fischer* v. *Fischer* (254 N. Y. 463, 465) stated that the judgment in the *Kaufman* case was never reviewed by that court. The *Kaufman* case (*supra*) appears to be based upon the theory that no one who is a party to obtaining an invalid decree

of divorce may question collaterally the judgment of the foreign court. As has been stated before, the question of estoppel of a party under such circumstances has now been decided by the Court of Appeals. (*Krause* v. *Krause, supra.*) Considering the determinations in the *Krause* and *Kaufman* cases together, the defendant, under the facts of the present case, is also barred from attacking the Nevada decree collaterally. The doctrine was expressed in the language of the Appellate Division in *Kaufman* v. *Kaufman* (*supra,* p. 165) as follows: " If she would not be heard to question the validity of the divorce and could not have her marriage with plaintiff annulled on the ground that the divorce was invalid, why should he, who induced her to obtain it and then to marry him on the assumption that she was free so to do, be heard to question its validity? Of course her former husband is at liberty to contest the validity of the divorce collaterally in a jurisdiction other than Nevada but that does not aid the plaintiff for he married the party who invoked the jurisdiction of the foreign court to grant the divorce and as to her and as to all claiming under her the divorce must be conclusively presumed to be valid when, as here, brought in question collaterally."

The case of *Davis* v. *Davis* (279 N. Y. 657) is not to the contrary because in that case the plaintiff had nothing at all to do with obtaining the invalid decree of divorce. What he did was to find out subsequently that the divorce against the wife had been obtained by publication in Florida, and with full knowledge of it urged the defendant to marry him. The court held that there was no estoppel. In the present case defendant was a party to the arrangement whereby plaintiff was to go to Reno to obtain the decree of divorce by publication. It was solely as the result of his efforts that the plaintiff was enabled to enter the United States, and it was his money that supplied her expenses here and paid the legal fees for obtaining a Nevada decree. Under those circumstances he was a direct party in obtaining the invalid decree. He should not be heard now to urge that the decree was invalid.

On the merits of the trial, however, the defendant should succeed. He is charged with being a drunkard and of having been guilty of cruel acts. In the first place, it would appear that the real drinking in this case was done by the plaintiff. She admitted before marriage in her letter to the defendant that if she did not stop drinking at that time she would not have very long to live. The testimony concerning which there was not even a doubt established that after the marriage she conducted herself in a boisterous and intoxicated manner. Her appearance upon the stand and her method of testifying all corroborated that fact. The only other testimony offered

by the plaintiff bearing on the question of her right to a separation was that of her relatives. Their testimony did not impress the court and was contradictory of the plaintiff's own admissions in writing with respect to her failings, and also contradictory of the testimony of the witnesses called by the defendant which carried with it the conviction of truthfulness. The defendant was a very frank witness upon the stand and he even admitted, without quibble, any failings that he might have had. His position is one which he could not long hold if he were the drunkard the plaintiff has attempted to picture him. The court does not believe the charges made against him. Plaintiff has not made out a case against him by a fair preponderance of the credible evidence, and judgment should be for the defendant dismissing the complaint upon the merits. Settle decision and judgment.