JOHANNA LANGNER, Petitioner, *v.* PAUL LANGNER, Respondent.

Domestic Relations Court of New York, Family Court, Queens County, February 25, 1943.

*Joseph Adamo* for petitioner.
*William J. Bozzuffi* for respondent.

PANKEN, J. The testimony in this case presents an unusual state of facts. The facts as established determine the rights of the parties. The evidence shows that: (1) The respondent was married to one M. Y. on July 29, 1926, in the State of California. (2) Thereafter and on or about August 25, 1934, the respondent was married to the petitioner in the city of Washington, D. C. (3) On the 7th of June, 1942, in the State of New Jersey the respondent, by a ceremonial marriage, took unto himself a third spouse. These are the facts:

Prior to the respondent's marriage to the petitioner herein, but subsequent to his meeting and becoming engaged to her, a mail order " divorce decree " was obtained by the respondent from spouse No. 1. The petitioner knew of the marital status of the respondent and of his first spouse. Their engagement, the testimony discloses, was conditional, as it had to be, since the respondent was not in a position to enter upon a valid marriage relationship with the petitioner herein. It is questionable whether the so-called " engagement " was in deed, in fact, and in law a contract between the parties. To enter into a valid, legal agreement, the parties must have the capacity to do so. The respondent had no such capacity and the petitioner knew that he had none.

The petitioner supplied the necessary funds to obtain the mail order " divorce decree."

The court must find, as a matter of law, that a decree of divorce obtained in Mexico, under circumstances such as the record herein discloses, is invalid. Neither the respondent nor spouse No. 1 ever resided in the Republic of Mexico, nor in fact had they ever left the territory of the United States prior to the granting of the " divorce decree " by a court in one of the States of the Republic of Mexico. The divorce decree therefore has no force and cannot be given effect in the courts of this State.

Marriage is a sacred relationship. It is the basis upon which culture has flowered and civilization has developed. It is the foundation upon which organized society rests, and from it sprang the responsibility of the individual to the group and the group to the individual. The marriage relationship is the basis of the family unit from which society, as a whole, stems. The relationship between the parties herein cannot be clothed in the garment of sacredness and sanctity that marriage engenders.

The respondent apparently did not regard his marital relationships seriously. He discarded spouse No. 1 by procuring a decree of divorce by mail and took unto himself spouse No. 2. When he tired of spouse No. 2, he followed a similar technique

and obtained a divorce from her, by mail, as he did in the case
of No. 1, and thereupon embarked upon a third marital venture,
which he regards as sacred for the reason that it was blessed
with twins as the issue thereof.

The petitioner seeks support from the respondent. To justify
the granting of support to the petitioner, the court must find,
as a matter of fact and law, that a valid marriage relationship
had been established between the parties.

The Domestic Relations Court of the City of New York has
not the power to declare a marriage valid or invalid except inci-
dent to the making of an order for the support of a dependent
spouse. A finding by this court that a valid marriage exists or
that no valid marriage exists establishes that fact, only insofar
as the Domestic Relations Court of the City of New York has
the power to make an order for the support of a spouse.

The Court of Appeals of this State has held that a man may
be liable for the support of two wives, even though wife No. 2
was not, in law, a wife. The principle of law promulgated is that
the " so-called husband " may be estopped from asserting the
invalidity of his marriage to his second wife in face of the fact
that he had married her and led her to believe that he had capac-
ity to do so. The principle established is that the " so-called
husband " is estopped from asserting the invalidity of his mar-
riage to a second wife because the second marriage was entered
into with no capacity on his part to enter upon a valid marriage
relationship.

In *Krause* v. *Krause* (282 N. Y. 355) the court said: " In 1932
the present defendant, while retaining his residence in this State,
made a visit to Reno, Nev., where he invoked the jurisdiction of
the courts of that State and obtained a decree of divorce from
his first wife, who neither entered an appearance nor was per-
sonally served in that action, and who at all times has remained
a resident of this State. (Cf. *Glaser* v. *Glaser,* 276 N. Y. 296.)
Consequently this divorce against the first wife is not recognized
by the courts of this State. (*Winston* v. *Winston,* 165 N. Y. 553;
*Hubbard* v. *Hubbard,* 228 N. Y. 81; *Lefferts* v. *Lefferts,* 263
N. Y. 131.) The subsequent marriage between plaintiff and
defendant, therefore, was void for the incapacity of defendant
to marry."

The respondent here, as in *Krause* v. *Krause* (*supra*), sets up
the defense that he lacked capacity to enter upon a valid mar-
riage relationship, contending that the divorce decree which was
intended to dissolve his marriage to spouse No. 1 was without
legal force and that, as a matter of law, he still is married to

spouse No. 1. Indeed he had no capacity. In the *Krause* case one of the parties had conferred jurisdiction on the Nevada Court over the person. In the instant case neither has. The " mail order divorce decree " had no effect upon the relationship existing between him and spouse No. 1. Is he, however, estopped from asserting his lack of capacity to enter into the marriage relationship with the petitioner herein?

In another forum he might be estopped from asserting a defense which could only be available to him as a consequence of his misconduct. The Domestic Relations Court of the City of New York has no equity jurisdiction. It is circumscribed in its powers. It can only determine matters before it in accordance with the powers granted to it by statute.

The respondent led petitioner to believe that he regarded his marriage to her as valid. In 1942 he proceeded to dissolve such marriage bond by obtaining a decree of divorce in the Republic of Mexico by mail, the purport of which was to dissolve his marital bond to petitioner.

He should be estopped from asserting lack of capacity to legally marry the petitioner. Throughout the relationship with all three spouses he has to all intents and purposes regarded himself as legally and lawfully married to each of them.

It is axiomatic that a man cannot set up his wrongdoing as a defense to the assertion of a right asserted by another. He knew or should have known that " mail order divorce decrees " do not dissolve marriage relationships sacredly entered upon. That fact, however, does not give sanctity to a marriage which in law cannot be consummated. To find that the petitioner is the lawful wife of the respondent would be tantamount to approval by law of polygamy.

The respondent had not capacity to enter upon a lawful marriage with the petitioner or with spouse No. 3.

A marriage is void, *ab initio*, if entered into by a party whose spouse by a former marriage is still living and from whom no dissolution of the bond had been granted by a court having jurisdiction of the subject-matter and the persons. Admittedly, the Mexican court had no jurisdiction over the person of either the respondent or spouse No. 1 or spouse No. 2, though it may have had jurisdiction over the subject-matter.

The recent case of *Williams* v. *North Carolina*, decided by the United States Supreme Court (317 U. S. 287, decided December 21, 1942), is not applicable here. In that case jurisdiction of the persons was obtained by the court granting the decree of divorce. The State of Nevada, under its law, acquired not only jurisdic-

tion of the persons but also of the subject-matter, and the full faith and credit clause of the Constitution of the United States was properly invoked.

In the instant case, the court of our sister republic, Mexico, had never acquired jurisdiction of the persons of either the respondent or his several spouses. The law as it obtains in the Republic of Mexico is applicable to its citizens. It cannot be imposed upon the citizens of any of the States of the United States of America. In the State of New York, as a matter of public policy and law, we will not recognize mail order divorces.

I must conclude, reluctantly, that the petitioner has failed to sustain the allegations of the petition in that she has not established that she is respondent's wife. Hence, the petition is dismissed.