Harry D. Goldman, J.
Plaintiff seeks to annul marriage between the parties on the ground that plaintiff was legally married on the date when the marriage ceremony was entered into between the parties and that said pre-existing undissolved marriage made the marriage between the parties a nullity. The defendant denies all of the material allegations of the plain *209 tiff’s complaint and contends that the marriage is legal and valid and further-, by way of counterclaim, demands payment of arrearages due to her under an alleged support agreement between the parties. There is no issue of said marriage. At the close of plaintiff’s proof the defendant rested. Plaintiff then moved for a dismissal of the counterclaim and the defenses and for the relief demanded in the complaint. Defendant moved for a dismissal of the complaint. The defendant did not appear in person and no proof was offered in support of her counterclaim which must, therefore, be dismissed.
It is conceded by both parties that in 1932 the plaintiff established a residence in Reno, Nevada and on November 28, 1932 secured a decree of divorce from his first wife one Katherine S. Hollis and thereafter, on the same day, married the defendant Hester Pearey Hollis. The first Mrs. Hollis did not appear in the Reno proceedings although she was personally served with summons. On May 29, 1934, upon application of the plaintiff, the same court which had granted him his divorce permitted the plaintiff to modify the decree of divorce by entering the general appearance of Katherine 8. Hollis and on said date the court ‘ ‘ made an order modifying the Decree of Divorce heretofore entered herein to the extent only of showing the general appearance on the part of the defendant, Katherine S. Hollis, in accordance with the provisions of Chapter 156, 1931 Statutes of Nevada, and ordered that this modified Decree be filed nunc pro tunc as of November 28, 1932.”
The parties lived together as husband and wife until November 17, 1945. Plaintiff now seeks, some 24 years after his marriage to the defendant, to have that marriage declared a nullity.
Plaintiff argues at length that the clean-hands doctrine does not bar him from the recovery he seeks. The court does not find itself in agreement with the plaintiff’s position in this respect, but it is not necessary to determine that question for the purposes of this decision. The sole proposition involved here is whether the plaintiff was free and eligible to enter into a marriage at the time when he married the defendant. To determine this question we must examine the validity of the divorce decree secured by the plaintiff on November 28, 1932, as amended nunc pro tunc on May 29, 1934. No evidence was produced to show that the plaintiff was not a bona fide resident of Nevada at the time he secured his divorce decree. The decree so states and the court believes that plaintiff is precluded from attacking the decree on that ground. Public policy requires that parties not be permitted to slip in and out of *210 marriages when it serves their whim to do so. What chaos could result by the adoption of such an “ off again on again ’ ’ policy! In particular should the plaintiff be permitted nearly a quarter of a century later to free himself from the obligation of a husband to support his wife by impunging and attacking a status which he made possible by the institution of the 1932 divorce proceedings 1
No clearer statement of the position of the courts of our State can be found than that written by now Presiding Justice Peck in Senor v. Senor (272 App. Div. 306, 313, affd. 297 N. Y. 800): “ It is this quality of regularity and presumptive authority attaching to the Nevada decree — an actual adjudication of jurisdiction upon competent evidence — as distinguished from the patent irregularity and lack of authority of a mail order decree, which warrants our State policy of treating the Nevada decree as conclusive between the parties. (Krause v. Krause, 282 N. Y. 355, 359, supra.) This policy is neither a validation of the decree nor abandonment of the State’s interest and authority in the marital res. The authority of the State remains to adjudicate upon the marital status whenever its social interest is aroused. That authority is amply affirmed and vindicated by the rule that third parties may at all times challenge the decree. (Matter of Lindgren, 293 N. Y. 18, supra; Urquhart v. Urquhart, 272 App. Div. 60, supra.) The infirmity in the decree remains constant and its vulnerability to the attack of third parties is sufficient protection of society’s interest. It is not necessary to go further and hold that the parties themselves may impeach the decree whenever it suits their purpose.” Ample support for frowning on this behavior is found in Farah v. Farah (196 Misc. 460, affd. 276 App. Div. 1000, affd. 303 N. Y. 865); Krause v. Krause (282 N. Y. 355) and Matter of Lindgren (293 N. Y. 18).
The court believes that the proof offered by plaintiff that defendant aided and abetted plaintiff in securing his divorce and in inducing bim to marry her is of no solace to the plaintiff. Even if defendant’s conduct was more culpable than that of the plaintiff, and the court does not believe such to be the case, this would be of no assistance to plaintiff.
Williams v. North Carolina (325 U. S. 226) and the many cases following that decision, require that full faith and credit be given to the Nevada decree. Plaintiff vigorously contends that the Nevada decree did not become final until the date of the modified decree of May 29, 1934, and that therefore he was not free to marry the defendant upon November 28, 1932 when *211 he participated in the marriage ceremony with her. We must, therefore, examine the effect of the nunc pro tunc aspect of the modified decree. It is indeed true that if the second marriage Avas void because of the prior existing marriage, then the second marriage Avas void ab initio.
The validity of the nunc pro tunc provision in the second decree is sustained by the Nevada statutes. The court takes judicial notice of section 9488 of the Nevada Compiled Laws, Supplement of 1931-1941 (Vol. 2) which provision was in effect at the time of the original decree and the modified decree. (Civ. Prac. Act, § 344-a, subd. 1.)
It is not often that one caii find a precedent wheie the fact situations are nearly identical to those iii the case át bar. We have such a decision in Chusid v. Chusid (207 Misc. 1039, 1041) where the plaintiff’s cause Of action for annulment Was dismissed and the Nevada decree of 1952, which had been modified nunc pro tunc in 1954, was upheld in the following language : ‘ ‘ The question presented to this court is substantially as follows: If a marriage is vulnerable by reason of a former spouse being alive and not duly divorced at the time such marriage is contracted, can this marriage be thereafter rendered invulnerable by the filing of an appearance by the former spouse nunc pro tunc in the divorce action in the rendering court? In other words, can this impediment be removed by a subsequent act of the parties to the first marriage? There is no statutory provision in this State to allow such validation. However, in Nevada, under rule 60(C) of the Rules of Civil Procedure, January 1, 1953, this amendment is permissible. Upon the basis of the full faith and credit clause in the United States Constitution this court must recognize the validity of the amended Nevada decree. (Cf. Valentine v. Valentine, 280 App. Div. 795.) Accordingly plaintiff’s cause of action for annulment is dismissed.” Rule 60(C) referred to above is of the same force and effect as section 9488 of Nevada Compiled Laws of which the court has taken judicial notice.
The marriage between the parties took place in Reno, Nevada, immediately folloAving the divorce decree of 1932. The validity of that marriage is to be determined by the laws of Nevada. (Matter of May, 305 N. Y. 486.) The marriage being valid in the State of Nevada it follows that it is valid in the State of New York. (See Van Voorhis v. Brintnall, 86 N. Y. 18; Earle v. Earle, 141 App. Div. 611.)
The court has had the advantage of two fine memoranda of law submitted by the attorneys for the parties. No good pur *212 pose can be served by further discussion in this memorandum. It seems clear to this court that the plaintiff’s complaint must be dismissed.
This decision is made and signed pursuant to section 440 of the Civil Practice Act. Submit judgment accordingly.