L. Barron Hill, J.
This is an action for a separation from bed and board. The facts, fortunately, are not commonplace.
Plaintiff and defendant commenced a meretricious relationship in or about the year 1940 in the city of New York and elsewhere. To the public, they held themselves out and conducted themselves in all respects as husband and wife.
Plaintiff, married twice previously, was free to marry, defendant was not. Defendant was then married to one Lily Marum.
Over the course of years, plaintiff and defendant constantly sought ways and means whereby defendant’s disability could be removed and their relationship could be accorded a legal status. At least, the plaintiff sought such a status, and the defendant joined in the discussions with attorneys and others conveying the outward appearance of a similar quest.
Eventually in 1949, the defendant purchased a home in Mal7 verne, Long Island, where the parties continued to reside together until the commencement of this action. At the time they moved to Málveme, plaintiff’s daughter, by a previous *697 marriage, had left her abode with her grandmother in Illinois and was living with the parties. She continued to reside with them for several years including her college years.
Plaintiff’s search for status continued and increased after her daughter came to live with the parties. In 1952, defendant personally crossed the border into Mexico and obtained a divorce in that country from the said Lily Marum. On December 28, 1952 at Greenwich, Connecticut, a marriage ceremony was duly performed wherein and whereby plaintiff and defendant attained the long sought for status and were denominated husband and wife.
In September, 1952, the said Lily Marum commenced an action for a separation in New York County on the ground of cruel and inhuman treatment based on the fact that defendant was living openly and notoriously with this plaintiff. In April, 1953, Lily Marum moved for temporary alimony and counsel fee and was awarded alimony of $55 per week and counsel fee of $400. This action was apparently allowed to languish until as the result of negotiations between Lily Marum and this defendant, the complaint was amended to one for absolute divorce. As a condition for the amendment of the action, defendant entered into a written agreement on March 24, 1954 to give Lily Marum $75 a week permanent alimony. Thereafter, defendant withdrew his answer, inquest was taken and Lily Marum was granted an interlocutory judgment of divorce on August 27, 1954 which became final November 27, 1954.
In 1955 plaintiff and defendant experienced ' ' marital difficulties ’ ’ to the extent that plaintiff engaged her present attorney. In May, 1957, plaintiff commenced this action for a separation on the ground of cruel and inhuman treatment and nonsupport.
By agreement between counsel for the parties, the defendant left the residence in Málveme after the commencement of this action. Thereafter and at the present time, defendant has been residing with his former wife Lily Marum in New York City. It was his testimony in this action that he would ' ' get down on his hands and knees to the first Mrs. Marum if she would take me back ” and that it was his intention to remarry her at the conclusion of this action. Lily Marum, likewise, testified that was her intention to remarry defendant.
■ It has, of course, been defendant’s defense to this action that he is not married to plaintiff, and consequently, there is no basis for this court awarding her a separation. Defendant alleges in his answer that he was coerced by plaintiff into obtaining the Mexican divorce. I do not find this as a fact.
*698 At no time has there been any adjudication that this particular Mexican divorce is invalid or that the subsequent Connecticut marriage between plaintiff and defendant is void for want of defendant’s capacity to marry. Defendant has alleged both as matters of fact in this action.
This action, as can readily be seen, is not easy of determination. In applying the peculiar facts to the applicable law as enunciated by our higher courts, I am, at the outset mindful of the admonition of former Chief Judge Loughban given in his dissenting opinion in Krause v. Krause (282 N. Y. 355, 363) wherein he stated: “ ‘ Marriage being a public institution of universal concern, and each individual marriage or its dissolution affecting the rights not only of the husband and wife but of all other persons, the court sitting in a divorce cause should regard the public as a party thereto, and so far protect its interests as not to suffer the decree for dissolution or suspension to pass contrary to the real facts and justice of the case. ’ ’ ’
I conceive that the public has an equal interest in an action for a separation as in an action for a divorce and in the determination of this action, I must consider the public interest as well as that of the individual parties.
Although the testimony does not reveal plaintiff’s exact age — a secret she, along with others of her sex, is undoubtedly entitled to keep — it is obvious from other testimony and appearances that she is at least in her late 40’s or early 50’s. She has for the last 17 years lived with defendant, as his wife, performing the normal and usual duties of a wife during that time. She has not been otherwise employed. If defendant has not enjoyed “ the best years ” of plaintiff’s life, he, at any rate has had 17 years of that life at his disposal. There is nothing in the record to indicate plaintiff has a profession or any other means readily at hand to support herself. In the absence of support by defendant, there is a possibility plaintiff may become a public charge.
In this action, plaintiff has not sought to establish the validity of the Mexican divorce. The theory of her case is based on Krause v. Krause (supra) and/or section 1140-a of the Civil Practice Act. Defendant relies, in the most part, on lower court cases which distinguish the Krause case and which he claims distinguish this case from the principles enunciated in Krause v. Krause (supra).
This court sits in this action as a court of equity and not one of law. The technical niceties may be noted but need not be followed blindly if the result is injustice.
*699 As far as I can ascertain from my research or that of counsel, the Court of Appeals has yet to repudiate the principles it enunciated in Krause v. Krause (supra). There the court stated (pp. 359-360) :
“We come, then, to a consideration of the principle applicable in the case at bar. We cannot lose sight of the fact that the present defendant was himself the party who had obtained the decree of divorce which he now asserts to be invalid and repudiates in order that he may now disown any legal obligation to support the plaintiff, whom he purported to marry. To refuse to permit this defendant to escape his obligation to support plaintiff does not mean that the courts of this State recognize as valid a judgment of divorce which necessarily is assumed to be invalid in the case at bar, but only that it is not open to defendant in these proceedings to avoid the responsibility which he voluntarily incurred.
“It is conceded that the estoppel which is invoked against the present defendant is not a true estoppel as that term is ordinarily understood, although the effect is the same in the case at bar.” (Emphasis mine.)
I have emphasized a portion of the above quotation for the reason that throughout the trial defendant continually urged that plaintiff had not proved the elements of estoppel. Whether she has need not be decided in view of the foregoing.
I find that the facts of this action bring it within the principles of Krause v. Krause (supra), and hold, therefore, that in this action defendant is estopped from proving, as a fact, (a) that the Mexican divorce is invalid, (b) that the Connecticut marriage is void.
Plaintiff having duly proved the marriage ceremony of December 28,1952 in Connecticut which, in the absence of proof to the contrary, is presumed to be valid and subsisting, I am at liberty to proceed with the merits of the separation action.
It would serve no useful purpose to review some of the more sordid aspects of the testimony in this case. Suffice it to say that plaintiff has proved a case of cruel and inhuman treatment as a course of conduct on the part of defendant towards her since December 28, 1952 sufficient to entitle her to a separation from bed and board.
I come now to the amount of permanent and temporary alimony, since the determination of the latter was reserved for the trial court by Special Term.
In Krause v. Krause (supra), the court pointed out at page 360 that in fixing the amount of alimony in such a situation the duties and obligations of defendant to his first wife must be *700 duly protected. Here, the testimony shows that for the past several years defendant’s base salary has been $14,000 a year and in addition he has received a bonus each year which has made his total earnings approximately $20,000 a year. Pursuant to his agreement and the judgment of divorce, he now pays the first Mrs. Marum $75 a week.
To my mind, the amount which plaintiff should receive cannot be calculated solely on the earnings of defendant. In a situation such as this, where she has had knowledge since 1940 of the existence of the defendant’s lawful wife and where at no step of the way since then has she been deluded, I conceive that she is only entitled to receive support from the defendant of a minimal amount to the extent that she may live decently but not luxuriously, and above all, will not become a public charge. Accordingly, I fix the amount of temporary and permanent alimony in the sum of $60 per week.
I should like to note at this point that had I permitted defendant to establish in this action, as a fact, the invalidity of the Mexican decree such that I, therefore, would be compelled to declare the Connecticut marriage void, it would be tantamount to a judgment declaring the nullity of a void marriage. In such an instance, I am permitted to direct support for the plaintiff to be paid by defendant (Civ. Prac. Act, § 1140-a) and in such an instance, I would direct support in the amount aforesaid.
This has been, indeed, a difficult case and one in which great skill as well as much time and effort had to be expended by the parties’ attorneys. Whether this be an action for a separation or to declare the nullity of a void marriage, I am empowered to award plaintiff a counsel fee (Civ. Prac. Act, § 1169). Accordingly, counsel fee is fixed in the sum of $925.
The foregoing constitutes the decision of this court in accordance with the provisions of the Civil Practice Act.
Settle judgment.