Isedor Wasseevogel, Spec. Ref.
Plaintiff seeks a separation on the grounds of cruel and inhuman treatment and nonsupport. The allegations of the complaint concerning such cruel and inhuman treatment and nonsupport have been established, as set forth in the proposed findings of fact and conclusions of law passed upon by the court. Defendant, however, denies any liability in this action on the ground that plaintiff’s Arkansas divorce decree from a prior husband was invalid. Defendant contends, therefore, that plaintiff’s subsequent marriage to him was void, thereby relieving him of any legal responsibility to her. It is plaintiff’s contention, however, that defendant’s complicity and aid in obtaining her Arkansas divorce decree estops him from now contesting its validity.
The credible evidence leaves no doubt that defendant was the motivating factor that caused plaintiff to obtain the Arkansas decree in the latter part of 1953. The record shows that defendant himself obtained a similar decree in Arkansas shortly before plaintiff obtained hers, despite his lack of the requisite legal domicile. Defendant then recommended and obtained for plaintiff the services of the lawyers who had previously represented him in his Arkansas action. Likewise, as a railroad employee, he obtained free train passage for plaintiff from New York to Arkansas and for her return trip. The fees for the legal services rendered by plaintiff’s counsel in New York and in the Arkansas action were paid from the joint funds of both plaintiff and defendant. Thereafter, on March 11, 1954, plaintiff and defendant, who had been living together since 1950, were married in the city and State of New York, where they continued to live as husband and wife until August, 1957.
Thus, this court, sitting as a court of equity, has before it a plaintiff whose divorce decree is purportedly invalid, and a defendant who seeks to avoid responsibility for his marriage to plaintiff following the defective decree for which he arranged and of which he had knowledge, but did nothing for approximately four years, while at the same time he/ relies upon a similar defective Arkansas decree to evade his own prior marriage to a New York resident.
The principal issue before the court is relatively simple, to wit, does such conduct on defendant’s part serve to bar him from asserting in this action the invalidity of plaintiff’s divorce decree. An examination of relevant case law and text material establishes an uncertainty and anomaly in the application of the so-called “ doctrine of estoppel ” in cases involving matrimonial disputes. It is fundamental that the existence of a valid marriage is prerequisite to the right to maintain an action *249 for divorce or separation (Statter v. Statter, 2 N Y 2d 668, 672; Garvin v. Garvin, 306 N. Y. 118; Fischer v. Fischer, 254 N. Y. 463, 466; Civ. Prac. Act, §§ 1147, 1161). Thus ordinarily a defendant in such action may assert, by way of an affirmative defense, plaintiff’s incapacity to enter into a valid marriage, as a result of a jurisdictional defect in plaintiff’s “ out-of-state ” divorce from a former spouse (Lefferts v. Lefferts, 263 N. Y. 131, 135; Fischer v. Fischer, supra). The legal situation, however, becomes clouded when the defendant who seeks to assert such affirmative defense obtained, or aided in obtaining, the foreign decree. It may be stated as a general proposition of law that one who invokes the jurisdiction of a foreign court is estopped from questioning the validity of the decree rendered by that court (Guggenheim v. Wahl, 203 N. Y. 390; Starbuck v. Starbuck, 173 N. Y. 503, 507). Up to and including the determination of the Court of Appeals in Krause v. Krause (282 N. Y. 355), in the absence of other factors, one who aided in obtaining the foreign decree Avas also estopped (see Oldham v. Oldham, 174 Misc. 22; Pandelides v. Pandelides, 182 Misc. 819; Lodati v. Lodati, 49 N. Y. S. 2d 805, affd. 268 App. Div. 1003). In actions which follow the Krause case, however, the courts began to limit the instances where this doctrine of estoppel was permitted to be invoked (see Caldwell v. Caldwell, 298 N. Y. 146; Landsman v. Landsman, 302 N. Y. 45). It now appears that many of our courts have determined that the quasi-estoppel applied in the Krause case does not operate against a party who has not himself procured the foreign decree, regardless of his OAvn conduct or assistance in its procurement (Gruttemeyer v. Gruttemeyer, 285 App. Div. 1185; Vasicek v. Vasicek, N. Y. L. J., Jan. 31, 1958, p. 11, col. 6; Honig v. Lionig, 267 App. Div. 908).
The apparent theory behind these recent cases which preclude the doctrine of estoppel is that the interest of the State in refusing to give even a semblance of recognition to an invalid marriage or divorce takes precedence over all other considerations. It is most unfortunate that some courts, in adjudicating marital status, have, in effect, determined that the public policy of this State uoav dictates that a court blind itself to the equities and other factors which often appear in matrimonial actions. In my opinion, public interest in the stability of matrimonial ties and their severance only as provided by law is not flouted by the application of the doctrine of estoppel in an instance such as the ease at bar. The fallacy in the reasoning which permits a defendant who comes into court with unclean hands to escape the effect of his deeds and the fraud which he helped to perpe *250 trate upon a sister State is the belief that barring him from alleging the invalidity of a foreign divorce decree would somehow afford recognition of such decree as valid in New York. Nothing could be further from the actual fact. Estoppel only denies a party the right to plead or prove an otherwise important, fact, without any determination as to its merits,, competency,, relevancy or materiality. NO' validity is accorded to such foreign, decree by the courts of this State merely by refusing to permit a defendant to escape the responsibility of his subsequent marriage after his aiding and abetting the procurement of such decree (see Krause v. Krause, 282 N. Y. 355, 359-360, supra; Bonney v. Bonney, 65 N. Y. S. 2d 488, 490-495). The sole effect of estopping defendant from contesting the foreign decree in, our State is to hold him to the marital obligations which he; voluntarily incurred. To determine otherwise is to refute' the, inherent powers of a court of equity to make a just disposition of each particular controversy before it. In my opinion, there is no public policy of this State so rigid and inflexible as to require a court of equity to ignore the brazen efforts, of a person to flout the law on one hand and on the other seek to invoke the same law in his favor. The cases cited herein which follow the Krause ease (supra) have placed undue emphasis on the purported public interest in the method of dissolving marital ties without giving enough consideration to the equities and personal rights of the particular parties there involved.
The doctrine of equitable estoppel is founded upon principles of morality and fair dealing and is intended to subserve the ends of justice (19 Am. Jur., Estoppel, § 42). It imposes silence on a party when, in good conscience and honesty, he should not be allowed to speak. To permit defendant herein now to assert the invalidity of the Arkansas decree would, in effect, allow him to occupy a position directly contrary to and inconsistent with his own past conduct. In view of such conduct and his full participation in and knowledge of the facts surrounding plaintiff’s divorce decree, I find it in the best interests of justice and of the particular parties here involved that defendant be estopped and barred from escaping his obligations to plaintiff as a result of his own testimony and other evidence which attack the Arkansas decree.
In the instant action, however, despite the estoppel now imposed upon defendant, I find that plaintiff nevertheless has failed to establish a valid marriage to defendant. In the proposed conclusions of law, it is significant that plaintiff herself has admitted the invalidity of the Arkansas decree. The burden was upon her, therefore, to prove that she had legal capacity to *251 enter into the marriage with defendant, regardless of this infirmity (Fischer v. Fischer, 254 N. Y. 463, supra; Sorrentino v. Sorrentino, 106 N. Y. S. 2d 328; Schein v. Schein, 169 Misc. 608). This burden, plaintiff failed to sustain. There is no proof that plaintiff’s former spouse, one Dantzler, was deceased at the time of her marriage to defendant, or that this prior marriage of plaintiff was otherwise validly terminated. I am constrained to hold, therefore, that in the absence of such proof, the prerequisite valid marriage between the parties to this action is lacking. Plaintiff’s complaint, therefore, must be dismissed.
Proposed findings of fact and conclusions of law have been passed upon and filed. No costs are awarded.
Submit decision and decree accordingly within 10 days on three days’ notice.