VIVIAN E. PACKER, Appellant, *v.* HUGH A. C. PACKER et al., Respondents.

First Department, November 5, 1958.

*Harold Green* of counsel (*Edwin Milkman* with him on the brief; *Hamburger & Green,* attorneys), for appellant.

*H. David Frackman* for Wilton Simpson, respondent.

BREITEL, J. A first wife sues to annul her marriage to her second husband and to declare void the divorce obtained against her by her first husband in the State of Virginia. She appeals from dismissal of her complaint after trial at Special Term. The court, in dismissing, found as a fact in its opinion that plaintiff wife had participated in effecting the divorce between herself and her first husband and that she was also estopped by reason of her second marriage to obtain affirmative relief, either with respect to the divorce or the second marriage.

The judgment dismissing the complaint should be affirmed, plaintiff wife being estopped to obtain either branch of affirmative relief which she seeks.

The complaint, in form, contains two causes of action, although the second cause of action repeats, without change, all of the allegations contained in the first cause of action. The prayer asks for a " judgment  *  *  * declaring " that her marriage to the second husband is void, and for a " Declaratory Judgment " that the Virginia divorce procured by her first husband is void.

Plaintiff wife and the defendant Simpson, the first husband, were married in 1941. He went to war and after he returned the parties separated. In 1948 the first husband Simpson obtained a divorce against plaintiff wife in Virginia. In that action she was neither served nor did she appear. It is conceded that defendant Simpson never established a valid residence in Virginia of any kind, let alone of sufficient duration to satisfy the statutes of Virginia. There was proof that plaintiff wife and defendant Simpson, prior to the divorce, had together made a visit to a lawyer in New York City for . the purpose of arranging a divorce. There was evidence as to the information that she received subsequent to the divorce concerning its validity and the basis upon which it was obtained. From this evidence contradictory inferences could be drawn as to the wife's knowledge and participation in the divorce arrangements. In any event, some seven years later she married her second husband, the defendant Packer. She had been acquainted with him since 1949, shortly after the Virginia divorce. In the meantime defendant Simpson had remarried and, pending this action, a child born, the issue of that remarriage. Plaintiff wife, having developed difficulties with her new husband, went again, in 1956 and 1957, to see lawyers in New York City for the pur-

pose of accomplishing a legal severance of her relations with the second husband. The present action was a consequence of the last development.

From the foregoing recital it appears that the Virginia divorce obtained by the first husband is void. As a further consequence it also appears that the remarriage by plaintiff wife to her second husband is equally invalid. While it is true that no judicial decree may alter the fact of invalidity of either the divorce or the remarriages among the parties to the several transactions, it is also true that the courts of this State apply various principles of estoppel which may bar one who acted affirmatively with respect to such invalid transactions and who thereafter seeks affirmative relief from the courts. As has been seen in a case decided simultaneously with this one (*Presbrey* v. *Presbrey,* 6 A D 2d 477), section 1134 of the Civil Practice Act does not provide an unqualified and unconditional right to an annulment merely because at the threshold there is concededly an invalid remarriage. The statute is rooted historically in the equity powers of the court and there remain some elements of discretion in the court to invoke equitable defenses, including that of estoppel.

The case most applicable to this one is that of *Carbulon* v. *Carbulon* (293 N. Y. 375). In that case a wife had started a separation action against her husband. While it was pending the husband obtained a constructive service divorce in Connecticut. Thereafter the wife discontinued her separation action, remarried, and, the remarriage proving unsuccessful, she started another action against her first husband for separation support. Her complaint was dismissed, the court holding that because of her remarriage she could no longer challenge the foreign decree dissolving her marriage to the first husband or prosecute an action for separation against him. Plaintiff wife in this case argues that the *Carbulon* case stands for no more than an estoppel to prosecute a claim for a personal right with respect to alimony. The *ratio decidendi,* however, of the case is broader, the court expressly holding, as earlier indicated, that the wife in that case could no longer challenge the foreign decree, namely, the Connecticut divorce obtained against her. (*Accord*: Restatement, Conflict of Laws, § 112.)

Plaintiff wife seeks to invoke the holding in *Landsman* v. *Landsman* (302 N. Y. 45) as some sort of narrowing of the scope of the *Carbulon* case. In the *Landsman* case a wife had brought an annulment action against her first husband and before the decree had become final had remarried. Thereafter the second husband, who had himself come into court with

" unclean hands ", brought an action to annul the second marriage and the wife counterclaimed for a separation. The court held that the second husband was entitled to the annulment, and the wife (although she may have acted in good faith with respect to the remarriage) was not entitled to a judgment of separation. The point of the case is that it was the second spouse who obtained the annulment of the second marriage, whereas in this case it is a spouse, having remarried on the basis of the invalid divorce, who seeks affirmative relief. That point is made all the clearer by the citation in the opinion in the *Landsman* case of *Fischer* v. *Fischer* (254 N. Y. 463). There the distinction is sharply and expressly made on the basis of who is the seeker of affirmative relief — a category of estoppel to be distinguished from true equitable estoppel based on " unclean hands ", which, under the rule in *Stokes* v. *Stokes* (198 N. Y. 301), is not available in actions brought under section 1134 (see *Presbrey* v. *Presbrey*, 6 A D 2d 477, *supra*).

Not to be confused with the problems arising from divorces obtained in sister States of the federal union are the specious mail-order divorces obtained in foreign countries. With respect to such divorces the courts have made it clear that they do not have even sufficient vitality to create an estoppel against the spouse who obtains it in an action to establish marital status, although it may suffice to preclude the spouse from asserting a private claim or demand arising out of the marriage (*Querze* v. *Querze*, 290 N. Y. 13, 17–18; cf., *Starbuck* v. *Starbuck*, 173 N. Y. 503, involving a Massachusetts divorce but cited by the court in the *Querze* case for the proposition last discussed).*

On the preceding analysis the case of *Krause* v. *Krause* (282 N. Y. 355) offers greater difficulty. But even that difficulty may be resolved. In the *Krause* case a husband who had procured a prior invalid Nevada divorce was held precluded from using the invalidity of that divorce as a defense to an action for separation and support by the second wife, with whom he had lived for many years. The court, in applying the preclusion, noted that the rule is not a true estoppel, although the effect was the same. It stressed that by the defense the husband was seeking to avoid his obligation to support his second wife on the pretext that it was inconsistent with his continuing obligation to his first wife from whom he had obtained the invalid

---

* In accord: *Kelsey* v. *Kelsey* (204 App. Div. 116, affd. 237 N. Y. 520). This case is a fortiori applied to the instant case, for its reasoning depends so much on *Haddock* v. *Haddock* (201 U. S. 562), since overruled in *Williams* v. *North Carolina* (317 U. S. 287). Hence, it rests on the premise, as in the *Krause* case, *infra*, that the sister-State divorce was entitled to no faith or credit in New York.

divorce. It would seem, therefore, that the court was treating the husband's defensive action as merely a distortion of what was otherwise a seeking for affirmative relief. This it would not permit him to do on the sole basis of impugning the very divorce invalidly obtained by him in Nevada.

Shortly after its decision in the *Krause* case the Court of Appeals in *Caldwell* v. *Caldwell* (298 N. Y. 146) made the distinction clearer. In the *Caldwell* case a Mexican mail-order divorce, collusively obtained by the parties to the first marriage, was rejected for all purposes. The husband was not precluded, therefore, from defending on the ground that the second marriage was invalid because of the invalidity of the prior Mexican divorce. The court, in distinguishing the *Krause* case, emphasized that there the defendant husband had practiced a fraud on the Nevada court with respect to residence while remaining a resident of the State of New York. The court further pointed out that in the case before it defendant had made no pretense that he was a resident of Mexico but had obtained the divorce by mail. In addition, it emphasized the collusive arrangement between the parties to the first marriage who thereby could not confer any jurisdiction upon the courts of Mexico, even for the slender purpose of developing a quasi-estoppel in a subsequent New York action involving marital status.

It is obvious then that in the instant case plaintiff wife is precluded by estoppel, or quasi-estoppel, by whichever term the preclusion is denominated, from obtaining the affirmative relief which she seeks. This is so either on the ground, as found by Special Term, that she participated, by her conduct, in the obtaining of the Virginia divorce, albeit she disputes the inferences on which that finding was made, or by reason of the fact that she remarried her second husband after the rendering of the Virginia divorce. This does not mean that by the denial of relief any intrinsic validity is given to the Virginia divorce or the second marriage. All that is involved is an estoppel of those who have procured or projected the invalid transactions. The legal facts are not changed, although the rights of certain persons to express the truth with regard to those facts may be destroyed, and then only in proceedings in which they seek affirmative relief, or the equivalent thereof, as in the *Krause* case (*supra*). The estoppel is personal and does not have the in rem *res judicata* effect which otherwise may attach to judgments affecting marital status in matrimonial actions. (*Urquhart* v. *Urquhart,* 272 App. Div. 60, affd. 297 N. Y. 689.)

Accordingly, the judgment dismissing the complaint should be affirmed, on the law, on the facts, and in the exercise of discretion, with costs to defendants-respondents.

BOTEIN, P. J., VALENTE and McNALLY, JJ., concur; M. M. FRANK, J., concurs in result.

Judgment unanimously affirmed, on the law, on the facts and in the exercise of discretion, with costs to defendants-respondents.

